No. 18,512.

THE IOWA CITY STATE BANK, *Appellant*, V. JOHN
CLAYPOOL, *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *Attached to Other Paper* — *Signed in*
*Blank* — *Signature Procured by Fraud* — *"Holder in Due*
*Course."* A paper printed with type of various sizes and
containing sundry agreements and conditions followed by an
order for merchandise, and this by a blank promissory note
separated from the foregoing portion of the paper by a
perforated line, was successfully presented to a merchant for
execution in blank with the statement that it was a mere
order for goods on commission and not a promise to pay
anything. *Held,* that whether the execution was procured by
the fraud of the person so presenting the paper or was the
result of such fraud coupled with the negligence of the
signer, none but a holder in due course could recover on the
detached promissory note.

2. SAME—*Trial—Instructions—No Prejudicial Error.* The al-
legations of a party warranted an instruction, which was
given, submitting his negligence to the jury as a question of
fact, while his own testimony justified a declaration of his
negligence as a matter of law, which declaration was re-
fused. *Held,* that the error, if any, was rendered immaterial
by the verdict and answers of the jury which showed that
the complaining party could not have recovered had the re-
quested declaration been given.

3. SPECIAL FINDINGS—*Construction of.* The rule that an answer
to a special question "We do not know" is equivalent to "No,"
followed.

Appeal from Franklin district court; CHARLES A.
SMART, judge. Opinion filed January 10, 1914. Af-
firmed.

*W. S. Jenks,* of Ottawa, for appellant.

*F. M. Harris,* of Ottawa, for appellee.

The opinion of the court was delivered by

WEST, J.: The defendant, a druggist at Williamsburg, a town of about five hundred inhabitants, found himself in possession of a copy of a document indicating that he had ordered and given a promissory note for about fifty dozen packages of perfumes of various kinds amounting to $189.75. He notified the company that it need not ship the goods. The document mentioned is a composite affair printed in various sizes of type and containing along with other items a guarantee, a warranty, a list of things given free, and a blank order for the line of perfumes mentioned. Underneath the place for the signature to the order is printed in small italics this line: "The company is authorized to detach the below agreement when this order is accepted and executed," and immediately following this is a line of perforations separating the portion of the document already referred to from the remainder, which consists of a blank promissory note payable in installments. On this part of the paper, detached, this suit was brought by a bank which claimed to be an innocent holder in due course by purchase from the company which claims to have sold the goods to the defendant. The latter testified that the agent came to his store and said that he wanted the privilege of placing a line of toilet articles and perfumes on commission; that he would furnish a show case, and when the goods arrived would come and help display the goods therein; that he was not selling the goods and did not want the defendant to buy them; wanted him to take them on commission, and he would come around every three months and check up what had been sold, which defendant should then pay for after keeping out his commission of 33⅓ per cent; and having agreed to this the defendant was handed the document in question with the request that he would fix it up so that there would be no mistake about the matter and both would under-

stand it. Upon the defendant's noticing the words "For value received, I promise to pay," etc., and saying that he did not like the looks of that kind of a contract the agent said "I will fix that all right, I will write in here the time when I come around to check you up; I will not put any amount in it because you are not buying the goods." He said that the figures at the bottom showing when the installments were due indicated the times when he was to come around to check up. The agent professed to be in a hurry to take a train for another town and requested the defendant to sign the document which the agent was to fill out at his leisure. Without going into details, the testimony clearly shows a skillfully planned and well acted deceit by the agent and surprising carelessness on the part of the defendant. His signature appeared following the order and also the note, so that an important question in the case was whether or not he bound himself by the latter or by his negligence estopped himself from denying liability thereon as against an innocent holder in due course. The jury found in his favor and the plaintiff appeals, complaining mainly of the instructions.

The court charged, in substance, that if the defendant signed a blank promissory note understanding that the agent was to fill the same out, and it was so completed, and transferred to the plaintiff, an innocent holder, the latter should recover, but that if he signed what the agent led him to believe was merely a contract for the sale of goods on commission without any intention of signing a promissory note, then such instrument when filled out by the agent in the form of a promissory note would not bind the defendant even in the hands of an innocent purchaser unless estopped by his own negligence to deny liability; and the question of such negligence was submitted to the jury. The plaintiff insists that under the defendant's own version of the facts in this case he was guilty of negligence as a

matter of law under the rule announced in *Ort v. Fowler*, 31 Kan. 478, 2 Pac. 580. We are inclined to agree with this contention, but this instruction was apparently drawn to fit the allegations rather than the evidence of the defendant, and under the former the question of negligence could properly be submitted as one of fact. And while his own testimony showed such negligence as would estop him as against an innocent holder in due course, the error, if any, in submitting instead of declaring it to the jury worked no substantial prejudice in view of the result reached.

The substance of section 21 of the negotiable instrument's law (Gen. Stat. 1909, § 5267), touching an instrument signed in blank and delivered to another for completion, was given and the jury were advised that this section applies only when the paper was understood by the signer and intended to be a blank promissory note. The plaintiff complains of this and suggests that this rests the matter on intention rather than on negligence and agency, but the language of the section is: "a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument." And the delivery of the paper with one's signature thereon in order that it may be converted into a negotiable instrument is certainly the same as if done with the understanding and intention that it is to be so converted.

The jury were told in instruction No. 8 that if they believed from the evidence that the note was procured from the defendant fraudulently then the burden was upon the plaintiff to show that it was a holder in due course. The instructions requested by the plaintiff were framed upon the theory that a signed blank note was delivered by the defendant to the agent and by the latter filled out so as to become a promissory note, but the court had to frame its charge to fit the peculiarly devised and constructed document used in

this case, which instead of being a blank promissory note included such blank so connected with other printed matter and yet so easily severable therefrom as to put the entire paper in a different class from that considered in *Ort v. Fowler*. Indeed authorities are cited by the defendant which seem to hold in somewhat similar situations that severance amounts to a material change in the paper, destroying the negotiability of the severed portion. Here, however, had the paper been filled properly and signed understandingly it would have shown on its face an order for goods to be paid for in installments, an agreement that all which should remain at the termination of the agreement were to be purchased back on certain conditions if the purchaser so desired, a warranty as to their quality, an agreement as to return and exchange, and a note payable in installments preceded by an italicized line in small print providing for its severance from the remainder of the document. The difficulty is not with this anomalous paper honestly used but with the condition brought about by its fraudulent use. Whether the signature was obtained solely by the fraud of the agent or by that together with the carelessness of the defendant, in either event the plaintiff could not recover unless a holder in due course. From the counter-abstract and a statement in reference thereto it appears that the verdict was received in the absence of counsel for both sides, and with it were certain special questions and answers which though not signed by the foreman were delivered to and filed by the clerk. No. 3 was as follows: "Was the note now sued upon sold by the Franklin-Price Company for a valuable consideration before maturity? A. We do not know." Under the repeated decisions of this court this answer was equivalent to "No" (*Railroad Co. v. Swarts*, 58 Kan. 235, 238, 48 Pac. 953; *Hilligoss v. Railway Co.*, 84 Kan. 372, 114 Pac. 383), and the result is a finding in effect that the plaintiff is not a holder in due course

(Gen. Stat. 1909, § 5305). It seems that the questions were submitted at the request of the plaintiff, and the fact that they were not signed by the foreman of the jury does not under the circumstances shown preclude their consideration as a part of the record of the proceedings in the case.

It is complained that the verdict is against the weight of the evidence. The plaintiff's testimony was that it purchased and received the note, detached, January 20, 1910, while the defendant testified that he saw the unsevered paper after November 8, 1910, which would be after its maturity. This left the matter for the jury to determine, giving to the evidence such weight and significance as they believed it deserved. In view of this finding, which with the general verdict presumably met the approval of the trial court, the plaintiff would not be entitled to recover had the instructions requested by it been given instead of those which the court gave.

The judgment is therefore affirmed.