No. 22,140.

GEORGE SHEERER, *Appellee*, v. GEORGE KANAVEL, A. E. LEHR-LING, and HATTIE PAUGH, as Executrix of the Last Will and Testament of W. M. Paugh, Deceased, *Appellants*.

### SYLLABUS BY THE COURT.

1. AGENCY—*Sale of Live Stock—Commissions.* The jury were asked whether the defendant company was to receive any remuneration for the sale of the live stock shipped by one claimed by the plaintiff to to have been the defendant's agent, other than as commission merchant, and answered, "We don't know." *Held,* that this answer is equivalent to "No," and means that nothing more than the commission was to be received.

2. SAME. The testimony examined, and held not to show the agency claimed by the plaintiff.

3. SAME. It was improper to receive testimony of statements made by the alleged agent as to his own agency.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed February 7, 1920. Reversed.

*Paul B. Brown, Silas S. Brown, H. F. Hudson, Kos Harris,* and *V. Harris,* all of Wichita, for the appellants.

*R. L. Holmes, C. G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered a judgment for $1,336.09, with interest, for cattle purchased by one Corder, who was by the plaintiff claimed to be the agent of Paugh and Company, a partnership composed of the defendants and engaged in buying live stock at Wichita. The defendants appeal, and assign as error the refusal of the court to sustain their demurrer to the plaintiff's evidence, the refusal to sustain the motion for judgment on the special findings and the motion for a new trial, the admission and rejection of certain testimony, the giving and refusing of certain instructions, and the allowing of prejudicial statements by the plaintiff's attorney.

The whole contention hinges on the alleged agency of Corder, which was denied by the defendants, who claim there was

no proof to justify the verdict, and that one of the answers by the jury to a special question showed that the proof had failed. They were asked if Paugh and Company was to receive any remuneration from the sale of the live stock shipped by Corder, other than as commission merchant, and answered, "We don't know." This was equivalent to "No." (*Bank v. Claypool,* 91 Kan. 248, 137 Pac. 949.) Hence, the case must be treated as one in which the company was to receive no remuneration aside from its commission. While it would seem unreasonable that the commission company could have employed Corder when it was to receive nothing on account of the cattle shipped by him except a commission, and that the answer practically settled the case in favor of the defendants, still we have carefully gone over the evidence to see what effect should be given to it aside from this point. Corder resided and did business near Gage, Okla. In the fall of 1913, and for some time before, he was buying cattle, and had chosen Paugh and Company as his commission merchants. In April, 1913, Paugh and Company wired the bank at Gage that at any time Corder had a shipment ready, and wanted to make a draft for cost they would pay the drafts. Corder showed this telegram to the bank, to the clerk of the bank at Wilcox, Ariz., and claimed that it indicated that Paugh and Company were to pay for them. A witness was permitted to testify that Corder told him that he was buying for the commission company. A bookkeeper for Paugh and Company, who drew all the checks for the company, testified that a commission of $96 was charged Corder, making a total of $599.10 for expenses, but that no commission was charged for the cattle sold at Gage, Okla., by Corder. He also testified that there was nothing on the books to show any account of the plaintiff, and nothing on the account sales with Corder, or any Corder account to show that any cattle were procured from the plaintiff.

Mr. Lehrling, one of the defendants, testified that they never employed Corder to buy cattle for the company; that he and Mr. Paugh were active members of the firm, and Mr. Kanavel was the silent member.

We fail to find any evidence to show that Corder was the defendants' agent. The company seems to have staked him in buying cattle, and to have collected the ordinary commission

for those sold for him. Only this, and nothing more. The defendants seem to rely largely on certain telegrams. One was from Corder to the company, to the effect that he had bought 355 cows and 10 calves, and wired the bank at Gage. One was from the company in answer to the Gage bank:

"We will pay Corder's draft drawn on us when the drafts are received by you."

One was to Corder asking him how many cattle he had bought and what he had paid for them. Also one to him—

"Notify Ray when you will get there can sell some cows there."

It is argued that because Corder showed some of this telegraphic correspondence to the plaintiff and talked with him to the effect that Paugh and Company intended to furnish the money, the plaintiff had a right to so conclude, and it is said:

"If appellants are not liable for appellee's cattle then appellants will be relieved of a liability which they had intended to incur, and release from which is not due to any change of conditions or circumstances which should affect their obligation in this case."

It is quite common for a commission firm to furnish a cattle buyer money with which to operate, and not be liable for his debts to the person from whom he buys, and we find no evidence here to indicate any difference with reference to this case.

The judgment is reversed, and the cause is remanded with directions to enter judgment for the defendants.