THE VALIER COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(SAM COLLINS, Defendant in Error.)

*Opinion filed February 18, 1926.*

1. WORKMEN'S COMPENSATION—*when notice of accident is sufficient.* A notice given the employer's manager by the injured employee's son that his father had been injured while working at his employment and was unable to continue at work is sufficient when given within the time prescribed by the act; and the employer can not set up the defense that its manager was not acquainted with the son and did not know to whom he referred as having been injured, where the manager does not deny the testimony of the son that when informed of the injury he inquired about the employee's condition.

2. SAME—*when Industrial Commission should allow continuance for purpose of examination by specialist.* Where the question whether the employee's disability was due to an injury received during his employment or to other causes can be determined only by a physical examination by a specialist, and where the employee, after examinations by local physicians, refuses to submit to an examination by a specialist at the employer's expense, but finally, when it is too late to do so in time for the hearing, notifies the employer that he will submit to an examination, the Industrial Commission should allow the employer's motion for a continuance so as to give a reasonable opportunity to have an examination made.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. J. C. EAGLETON, Judge, presiding.

W. H. HART, M. M. HART, and W. W. HART, for plaintiff in error.

A. W. KERR, and A. C. LEWIS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Sam Collins filed with the Industrial Commission an application for the adjustment of his claim, which he charged arose out of an accidental injury suffered on January 11, 1923, while employed by the Valier Coal Company. On the hearing before the arbitrator it was stipulated that the parties were subject to the provisions of the Workmen's Compensation act. The arbitrator found that Collins was not entitled to compensation because notice of the accident had not been given within the time prescribed by the act and his condition was not the result of the accident. On review the Industrial Commission found that notice had been given and demand for compensation had been made within the time required, and awarded compensation at the rate of $16 per week for 265 weeks, $10 for an additional week, and thereafter a pension for life at the rate of $28.33⅓ per month for the reason that the injury sustained resulted in complete and permanent disability to work. The decision of the Industrial Commission was affirmed by the circuit court. On the petition of the company this court granted a writ of error for a further review.

On January 11, 1923, Sam Collins was forty-seven years of age, married, and had two children under the age of sixteen years. He resided at Valier, in Franklin county, and had been a miner for about thirty years. He testified before the arbitrator that on the day in question he was engaged, with eleven other men, in putting up a steel I-beam, about two feet wide and twenty-five feet long, in the west

motor pit of the company's mine, when a sharp pain struck him, which affected his left side and chest, caused a throbbing in his neck and made him sick; that he worked the rest of the day but not at hard labor, and continued to work in the mine until the 24th day of January, when the pain grew worse and he quit his employment; that at the time of the hearing it was difficult to breathe, his neck continued to throb, his heart beat rapidly, exertion weakened him, part of the time he could not sleep, and he was unable to perform any kind of physical work, although, accompanied by another person, he drove an automobile; that he said nothing to anybody connected with the mine about his injury until a couple of months after the accident; that he filed his claim with the check-weighman of plaintiff in error early in May, 1923; that about a week later he inquired of Thomas W. Frazier, the company's chief clerk, whether there was any compensation for him and was answered in the negative, and that although his son told him that he had notified the company of the accident, not deeming the notice sufficient he served upon plaintiff in error on June 8, 1923, a written notice of the accident.

Harry Collins, son of defendant in error, testified that his father told him on January 25, 1923, to notify the mine of his injury; that he, the son, saw the manager on the next day and informed him that his father had been injured on the 11th of the same month while lifting an I-beam in the motor pit on the west side of the mine; that his father quit on the 24th of January and did not know when he would return to work. The son further testified that his father was in good health prior to the accident.

Four physicians testified in Collins' behalf, Drs. Roy W. Harrell and Frederick Greenebaum before the arbitrator, and Drs. H. H. Turner and Nathaniel H. Adams before the Industrial Commission on review. They all found an aneurysm, or an enlarged condition of the aorta, which they variously said might be caused by syphilis, gout, rheu-

matic or diseased conditions of the blood vessels, arterio-
sclerosis, valvular disease of the heart, chronic alcoholism,
chronic Bright's disease, or a strain. Three of the physi-
cians stated that with an aneurysm there is danger that
physical exertion may be followed by a rupture and result
in sudden death.

Collins consulted Dr. Harrell on April 27, 1923. He
told the doctor that his condition had troubled him for a
considerable period but he did not say that he had been hurt
in the mine. Dr. Harrell was unable to state what caused
Collins' condition, but believed him capable of doing light
work which involved no exertion. Dr. Greenebaum, upon
whom Collins called in April or May, 1923, made a physi-
cal, X-ray and laboratory examination of him. He testified
that his examination did not reveal any arteriosclerosis ex-
cept what would naturally be expected in a man of Collins'
years, and he found no evidence of syphilis or of chronic
Bright's disease. Dr. Greenebaum could not give the cause
of Collins' condition but admitted that it might have been
of one or two years' standing, and that Collins was able
to do light work. Dr. Turner examined Collins on April
15, 1924. He found his blood pressure low, his pulse rapid
and his heart normal in size and position and its move-
ments regular. He also found an aneurysm, which by ex-
ercise, such as walking up and down stairs, would increase
the frequency of heart action. In his opinion Collins was
not able to perform physical labor, although he did not
know what caused his condition. Dr. Adams testified that
on April 16, 1924, he found a slight indication of the en-
largement of Collins' heart, but that it should have been
greater to compensate for the impaired condition of the
aneurysm. He said that if a blood vessel is diseased a strain
is more apt to produce an aneurysm than if the heart and
blood vessels are normal.

On behalf of plaintiff in error Dr. J. B. Moore testified
before the arbitrator that he treated many men injured in

the mines; that Collins came to him of his own accord and stated that he had been ailing about two months; that his trouble began with a pain about the right second rib, that he was short of breath, had lost weight, was somewhat constipated, had no appetite and that his throat had been sore, but he did not say that he had been injured in the mine. Dr. Moore further testified that he examined Collins on January 30 and June 2, 1923; that he found no symptoms indicating aneurysm; that there was no evidence of a disability resulting from any injury on the 11th of January, 1923, and that in his opinion Collins was able to work and do timbering in the coal mine. Dr. Gilmore, also called by plaintiff in error, testified that he made an X-ray examination of Collins on June 2, 1923; that it showed the arch of the aorta slightly more prominent than is usual, but that this condition was of no significance nor accompanied by definite physical signs.

On rebuttal Collins denied that he told Dr. Moore that he had been ailing two months. Before the commission he testified that he never had syphilis or any other venereal disease. T. J. McDonald, his brother-in-law, testified that prior to the accident Collins was able to do the heavy work about the mine but that since that time he did the lightest part of the work.

On May 19, 1924, plaintiff in error served upon Collins a written request to submit, at its expense, to an examination by Dr. T. J. Sullivan, Jr., at the Mercy Hospital, in Chicago, on any day during the week beginning on that day, and if such time and place were not reasonably convenient he was requested immediately to notify plaintiff in error at what time and place it would be convenient for him to submit to such examination. Collins refused. On the second of June following, plaintiff in error served him with another notice in the same form, requesting that he submit, at the company's expense, to an examination by Dr. Francis R. Fry, Humboldt building, St. Louis, Mis-

souri, on any day during the week beginning June 2, 1924, and the offer was made to have Dr. Hahn, the company's local physician at Valier, accompany him on the trip if he desired. On June 6 the request was repeated and $15 tendered to Collins to defray his expenses for the purpose. This request was also refused by Collins. There followed on June 10, 1924, a motion by plaintiff in error for a continuance of the cause until such time as Collins should submit to an examination at the expense of plaintiff in error, either by Dr. Fry or Dr. Sullivan, or any other heart specialist or expert diagnostician selected by the Industrial Commission. This motion was supported by the written requests served upon Collins for an examination and the testimony of T. W. Frazier and Dr. I. T. Roberts. Frazier testified that he was chief clerk of plaintiff in error; that where doctors recommended that an employee needed expert treatment or examination plaintiff in error sent him to Chicago or St. Louis for that purpose; that several physicians had recommended that an expert examination of Collins should be made; that Valier is about three miles from Christopher and travel between the two places is carried on by railroad and jitneys; that Christopher is located on the Illinois Central railroad, about ninety miles from St. Louis, and the latter city can be reached by train within three hours and the round trip made in a day, and that there is a hard road practically all the way. Dr. Roberts testified that he made a physical and X-ray examination of Collins on April 15, 1924, and in a report to plaintiff in error recommended that he be sent to some specialist in cardio-vascular diseases in order that the exact condition from which he was suffering might be ascertained; that in a general way he was familiar with the physicians and surgeons practicing in Franklin and adjoining counties and that no one of his acquaintance specialized in the conditions he found in Collins. He believed Collins should go to St. Louis to be examined by some specialist and that he

was able to make the trip. In opposition to the motion, Collins testified that his physical condition was such that he did not believe he could safely go to Chicago or St. Louis to be examined by either of the doctors mentioned or by any specialist selected by the commission but that he was willing to submit to an examination by any local physician. On July 10, 1924, he caused a letter to be written to plaintiff in error, which was received by its counsel two days later, offering to submit to an examination at any time prior to July 15, 1924,—the day to which the hearing before the commission had been postponed,—by any physician or surgeon at any place in Franklin or any adjoining county which could be reached without seriously endangering his health. The motion for a continuance was denied and the decision and award of the commission followed.

The foregoing is the substance of the testimony material to the issues. Lack of proper notice, error in not requiring Collins to submit to an examination as requested by the employer, and the insufficiency of the evidence to sustain the award, are urged by plaintiff in error as grounds for a reversal of the circuit court's judgment.

On the question of notice, plaintiff in error argues (1) that it does not appear that the manager of the mine was acquainted with Harry Collins, who testified that he informed the manager of his father's injury; and (2) that the information conveyed by the son did not indicate that the injury was serious enough to justify the employer in expecting that a claim for compensation might be made. Harry Collins, the son, testified that he was employed by plaintiff in error and that he was acquainted with the manager, who, after he was informed of the injury suffered by defendant in error, inquired about his condition. There is no denial of this testimony by the manager. It is highly improbable that the manager was not acquainted with the son, or that he did not know to whom the son, in giving him notice of the injury, made reference. If the manager

of the mine was apprised of the fact that defendant in error was injured while assisting in lifting a heavy I-beam and by reason of such injury was unable to continue at work, plaintiff in error had sufficient notice that a claim for compensation might be made. (*Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498; *Hydrox Chemical Co.* v. *Industrial Com.* 291 id. 579; *Chicago Rawhide Manf. Co.* v. *Industrial Com.* 291 id. 616.) The notice was given within the time prescribed by the act. Even if there had been some defect or inaccuracy in the notice given, there was no showing that the plaintiff in error was prejudiced thereby.

Section 12 of the Workmen's Compensation act as it stood when the application here involved was filed, required an employee entitled to disability payments, if requested by the employer, and at the latter's expense, to submit himself for examination to a duly qualified medical practitioner or surgeon selected by the employer at a time and place reasonably convenient for the employee, as soon as practicable after the injury, again one week after the first examination, and thereafter at intervals not oftener than once every four weeks. The purpose of these examinations was to determine the nature, extent and probable duration of the injury received by the employee and to ascertain the amount of compensation which might be due him from time to time for disability, according to the provisions of the act. If he desired, the examinations were required to be made in the presence of a duly qualified medical practitioner or surgeon provided and paid by him. If the employee refused to submit to such examination or unnecessarily obstructed it his right to compensation payments was temporarily suspended until such examination took place, and no compensation was payable for such period. (Cahill's Stat. 1921, p. 1697.) Three of the physicians who testified in behalf of the defendant in error,—Drs. Harrell, Greenebaum and Turner,—were unable to state the cause of his condition.

Defendant in error told Dr. Harrell that he had been ailing for a considerable period, but he said nothing about suffering an injury in the mine. While Dr. Gilmore, who testified for plaintiff in error, found the arch of the aorta slightly more prominent than is usual, he stated that this condition was of no significance. Dr. Moore, who was first consulted by defendant in error nineteen days after he claims he was injured in the mine, testified that he then stated that he had been ailing for about two months. It was therefore important to determine the cause of his condition.

Defendant in error complains that his injury is the result of the accident; that his disability is complete and that he is wholly and permanently incapable of work. He admits that he continued to work in the mine from the 11th to the 24th of January at light labor, and that he personally made no complaint to any person connected with the mine until two months after the accident. He drove an automobile after he terminated his employment by plaintiff in error, and Drs. Harrell and Greenebaum testified that he was able to do light work. Dr. Moore examined him again on the second of June following the accident and testified that he was able to work and do timbering in the mine. Dr. Roberts, after an examination of defendant in error, recommended that he be sent to some specialist in cardio-vascular diseases in order that his condition might be determined, and stated that defendant in error was able to go to St. Louis for that purpose. Successive requests by plaintiff in error for an examination of defendant in error by Dr. Sullivan, of Chicago, and Dr. Fry, of St. Louis, followed. When these requests were made more than four weeks had elapsed since Dr. Roberts examined defendant in error, and under the act plaintiff in error was entitled to another examination. It appears that there was no specialist, such as was sought, in Franklin county or the adjoining counties. St. Louis, where Dr. Fry practiced, ninety miles distant, could be reached by train in about three hours,

or by automobile over hard roads practically all the way. The expense of the trip to St. Louis was tendered to defendant in error, and, if he desired, the company's local physician would accompany him. But he refused to submit to an examination by Dr. Sullivan in Chicago, Dr. Fry in St. Louis, or any physician selected by the commission. Plaintiff in error was entitled to an examination, as the act provides, by a duly qualified medical practitioner or surgeon. Such a practitioner apparently could not be found nearer than St. Louis. Since defendant in error drove an automobile and two of his physicians testified that he was able to perform light work, it does not appear that a trip to St. Louis for an examination by a specialist would have injured his health or resulted in such inconvenience to him that he was warranted in refusing to comply with the request of plaintiff in error. Nor does the notice that defendant in error would submit to an examination by any physician or surgeon at any place in Franklin or any adjoining county which could be reached without seriously endangering his health avail him. That notice was received by counsel for plaintiff in error on July 12, three days before the final hearing set by the commission, and it came too late to afford plaintiff in error a reasonable opportunity, under the circumstances of the case, to have an examination made by a specialist. That opportunity should have been given by the commission, and the denial of the motion for a continuance for that purpose was error.

In view of what has been said, the remaining contention of plaintiff in error, that the evidence is insufficient to sustain the award, need not be considered.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to remand the cause to the Industrial Commission for further proceedings in conformity with this opinion.

*Reversed and remanded, with directions.*