No. 26,872.

## H. S. MEEK, *Appellant*, v. THE WHEELER, KELLY & HAGNY INVESTMENT COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*Evidence—Reduction of Jury Verdict.* In an action for compensation to a workman for an injury sustained in his employer's service, the record examined, and held that the lack of evidence justified and required a reduction of the verdict of the jury.

2. TRIAL—*Special Interrogatories—Definiteness of Answer.* Under the issues and evidence in this case, no prejudicial error arose from the overruling of plaintiff's motion to require the jury to answer decisively certain questions propounded to them instead of the answers given: "We do not know."

3. SAME—*Instructions—Special Interrogatories Not Covered by Evidence.* An instruction touching the proper answer which the jury should give to a special question of fact, where no evidence—or insufficient evidence worthy of credence—is adduced, considered, and held not prejudicial to appellant.

4. WORKMEN'S COMPENSATION ACT—*Evidence—Physician Appointed by Court —Weight and Credence of Testimony.* In an action under the workmen's compensation act, it was proper for the trial court to appoint a neutral physician to examine the plaintiff's physical condition, and it was not erroneous for such physician to testify, among other matters, that he had been appointed by the court, nor for counsel to argue to the jury their views touching the weight and credence which might be given to his testimony because of such appointment.

5. SAME—*Evidence—Temporary Partial Incapacity.* The record examined and held to justify and require a modification of the judgment by raising its amount to include compensation for an interval of time determinable by the record during which temporary partial incapacity did continue, notwithstanding a want of evidence to support a claim for such compensation extending into the future.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed December 11, 1926. Modified.

*John W. Adams, William J. Wertz* and *George Adams,* all of Wichita, for the appellant.

*Charles P. Embry, K. W. Pringle* and *G. Austin Brown,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action arose under the compensation law. Plaintiff was injured by falling from a scaffold while painting the

---

Trial, 38 Cyc. pp. 1810 n. 17, 1921 n. 26, 1930 n. 5. Workmen's Compensation Acts, C. J. pp. 96 n. 12, 127 n. 94, 130 n. 44; L. R. A. 1916A 163, 1917D 186; 33 A. L. R. 115; 28 R. C. L. 823.

interior of a business building in Wichita. The defendant, his employer, paid plaintiff $435 as compensation, at the rate of $15 per week for 29 weeks following his injury; after which period payments were stopped, on the assumed ground that plaintiff's incapacity had ceased. This action followed.

An advisory jury returned a verdict in favor of plaintiff in the sum of $1,700, together with certain special findings of fact:

"SPECIAL QUESTIONS SUBMITTED BY THE PLAINTIFF.

"1. Do you find that the plaintiff received injuries as alleged in his petition and sustained therefrom a total disability to work for a length of time? A. Yes.

"2. . . . (a) How long in the past the plaintiff has sustained such total disability? A. Twenty-six weeks.

"(b) How long do you find that the plaintiff will sustain a total disability to perform work in the future? A. None.

"3. If you find that the plaintiff has sustained a partial disability to work or earn wages,

"(a) Is such partial disability to work permanent? A. No.

"(b) If not permanent, how long will it continue, or do you find it has ceased, and if so, when did it cease? A. We do not know.

"4. What expense do you find the plaintiff has incurred for medical attention during the first fifty days following the accident? A. $75. . . . .

"SPECIAL QUESTIONS SUBMITTED BY THE DEFENDANT.

"5. . . . State: (a) Whether plaintiff has been partially incapacitated since his total incapacity from labor ceased; (b) Whether the plaintiff will be in the future partially incapacitated from labor by reason of said injury. A. (a) Yes. (b) Yes.

"6. If you answer question number five in the affirmative, then state: (a) How many weeks after total incapacity ceased plaintiff was partially incapacitated; (b) How many weeks will plaintiff be partially incapacitated from said injury in the future? A. (a) We do not know. (b) We do not know.

"7. If you answer number five in the affirmative, then state: (a) How much the plaintiff has been able to earn during his partial incapacity from labor; (b) How much plaintiff will be able to earn in the future during his partial incapacity? A. (a) We do not know. (b) We do not know.

"8. If you find that the plaintiff was injured and disabled, state what extent in percentage the use of his ankle has been limited. A. Twenty-five per cent."

Plaintiff filed a motion to set aside most of these findings, also a motion for judgment for $4,698 "on the special findings and the undisputed evidence, notwithstanding the general verdict." These motions were overruled.

Defendant filed a motion to set aside the general verdict and for judgment in its favor in accordance with the special findings, and

Meek v. Wheeler, etc., Investment Co.

that defendant be given a credit thereon for the sum of $435 admittedly received as compensation during plaintiff's disability. This motion was allowed. The trial court made a computation based upon the jury's special finding of total incapacity for 26 weeks at $15 per week, $390, plus $75 expense incurred by plaintiff for medical attention, totaling $465, less a credit of $435 for payments theretofore made by defendant to plaintiff, and gave judgment for the balance, $30, in favor of plaintiff.

Plaintiff appeals, contending first that the trial court erred in setting aside the general verdict. This court can discern no evidence upon which such a verdict could be based. Plaintiff relies upon the jury's special finding of plaintiff's continuing partial incapacity and that the use of his ankle had been limited 25 per cent. But whatever significance should be attached to these findings (to be considered later) they furnish no basis for a verdict of $1,700.

Error is assigned in overruling plaintiff's motion to require the jury to return to the jury room and answer the question how long in the future the plaintiff would be disabled, also to require the jury to answer plaintiff's question 3 (b) and defendant's question 6 (b). On this point the record reads:

"The Court: That will be overruled. I don't blame them for answering it like they did."

Appellant invokes the rule that the failure of a jury to return sufficient answers to special questions is prejudicial error which requires the granting of a new trial. But that rule pertains to cases where some competent and trustworthy testimony has been adduced in evidence. Here there was none, unless on a theory which we will consider when the other points pressed upon our attention by appellant are determined.

Fault is found with this instruction given by the court:

"You are further instructed that the question of plaintiff's earning capacity is a fact to be determined like any other fact in this case, from the evidence which has been introduced in the case. In order to support a finding by you as to earning capacity, as well as any other fact or issue in the case, there must have been some evidence introduced upon which to base such finding. Where a fact is in issue in a case and no evidence is introduced in relation thereto, or sufficient evidence is not introduced in the case to enable the jury to arrive at a finding of fact in relation thereto, no finding can properly be made by the jury and in such a situation a proper answer to a special question calling for such finding would be 'We do not know.' "

A just criticism of this instruction would be that the trial court

should have told the jury that where an asserted fact is in issue, and no evidence—or no evidence worthy of credence—is introduced in support of it the proper answer is an unequivocal and positive "No," not an evasive and indeterminate response such as "We do not know." However, the burden was on plaintiff to prove all the material facts upon which he relied for judgment, and the rule is that a jury's answers, "We do not know," have the effect of findings against the party having the burden of proof, inasmuch as it warrants an inference that there was a lack of preponderating evidence in his favor. (*Sheerer v. Kanavel*, 106 Kan. 220, 187 Pac. 658; *Toelle v. Sells-Floto Shows Co.*, 111 Kan. 562, 569, 207 Pac. 849; *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538; id., 117 Kan. 1, 2, 230 Pac. 529.) The fair interpretation of the trial court's observation, "I don't blame them for answering it as they did," is that the court itself could discern no evidence in the record on which precise and positive answers favorable to plaintiff could have been given. The criticized instruction was not prejudicial to plaintiff.

Plaintiff also assigns error in overruling his motion to set aside certain of the special findings. This court perceives no basis upon which that ruling could be disturbed.

Another error is predicated upon the fact that a physician was permitted to testify that he had made an examination of the plaintiff at the direction of the trial court itself, and because defendant's counsel argued that fact to the jury as one of special significance tending "to give his evidence greater weight than would otherwise be accredited, and to minimize the weight of other doctors and evidence in the case." There is a provision of statute which indicates a legislative belief that expert witnesses called by the respective litigants may possibly be somewhat biased in their views and that the views of a neutral physician called by the court and under no obligation to either litigant might be helpful in ascertaining the truth touching actual or simulated injuries and incapacity in industrial accident cases. (R. S. 44-516.) The relative amount of credence to be attached to the testimony of any expert witness, whether avowedly partisan, presumably neutral, or manifestly disinterested—like the testimony of any other witness—is a fair subject for debate in addressing the jury. This assignment of error lacks merit.

We come then to a matter which has not been specifically urged on this court's attention, but one which obviously intrudes in considering the propriety of reducing the verdict from $1,700 to $30.

We have said there is no evidence to sustain a verdict for $1,700, and that its reduction was proper. But there were certain special findings of the jury entitled to effective significance in determining the amount of that reduction which should not be overlooked. The jury found that plaintiff was partially incapacitated, but for want of evidence they could not say how long that partial incapacity would continue. They did find it would not be permanent. They did find it still existed at the time of the trial. These findings, together with certain facts disclosed by the record, supply sufficient known factors upon which some award could and should have been allowed to plaintiff. He was injured on March 20, 1924. He was totally incapacitated for 26 weeks. Leaving out of the calculation the first week following the accident, 26 weeks would carry the time down to September 25, 1924, when plaintiff's total disability ended. The jury found that he was still partially incapacitated at the time of the trial, April 24, 1925, and that such partial incapacity would continue until some undetermined future time. It thus appears that regardless of the indeterminable future time the partial and temporary incapacity would continue, it did endure from September 25, 1924, until April 24, 1925, and plaintiff was entitled to compensation therefor. And since there was a want of testimony on which his compensation for such partial incapacity could be otherwise computed, plaintiff was entitled to the minimum statutory allowance, which is $6 per week. (R. S. 44-510, 44-511; *Stefan v. Elevator Co.*, 106 Kan. 369, 373, 187 Pac. 861; *Anderson v. Oil & Refining Co.*, 111 Kan. 314, 206 Pac. 900.)

In *Emry v. Cripes*, 110 Kan. 693, 205 Pac. 598, it was held:

"Under the workmen's compensation act, where a workman suffers a permanent partial disability, the compensation for which is not definitely prescribed by the statutory schedule for specific injuries, the rule for determining the compensation to be awarded is to make a computation of sixty per cent of the difference in his weekly earning capacity before and after his injury, for eight years; and if this computation results in any sum less than minimum of six dollars per week for eight years, the disabled workman shall be awarded such minimum." (Syl. ¶ 2.)

Between the time when total disability ceased, September 25, 1924, and April 24, 1925, the record discloses an ascertained interval of 28 weeks during which partial incapacity continued. The minimum allowance of $6 per week for 28 weeks is $168. It thus becomes clearly demonstrable from the record that the judgment

should be increased by that amount. (R. S. 60-3317; *Mitchell v. Derby Oil Co.,* 117 Kan. 520, 530, and citations, 232 Pac. 224.)

The cause will be remanded to the district court with instructions to enter judgment for plaintiff for $198, and thus modified it will be affirmed.