## INDEMNITY INS. CO. OF NORTH AMERICA v. MURPHY.

### No. 11277.

Court of Civil Appeals of Texas. Dallas.

Sept. 17, 1932.

Rehearing Denied Oct. 22, 1932.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

LOONEY, J.

This case arose under the Workmen's Compensation Law. T. A. Murphy was an employee of Smith Bros., Inc., a subscriber who carried a policy of workmen's compensation insurance, covering its employees, with the Indemnity Insurance Company of North America. Murphy, having received injuries in the course of his employment and refusing to abide by the final decision of the Industrial Accident Board, filed this suit in the court below to set aside its award, etc. The case was tried to a jury, and upon their findings the court set aside the award and gave Murphy compensation as for total permanent incapacity at the rate of $17.31 per week, and, after deducting $173.10, amount previously paid appellee by the insurance company, rendered a lump sum judgment in his favor for $6,074.76, directing that one-third be paid to White & Yarborough, appellee's attorneys, from which the indemnity company appealed.

A defense urged by appellant was that, on March 31, 1930, it paid appellee $173.09, being for ten weeks' disability at the rate of $17.31 per week, and that on receipt of said payment appellee signed a compensation settlement receipt agreeing that it was in full settlement of compensation due him for said injuries, and that the settlement receipt was filed by appellant with the Industrial Accident Board; however, there was neither allegation nor proof that the settlement was approved by said board; in fact, its subsequent action shows that the settlement was not approved. The legal validity of this transaction is raised by appellant in several assignments, all of which, in our opinion, should be overruled for reasons which we will now state.

■ The pertinent provisions of the Workmen's Compensation Law are these: Section 14 of article 8306 provides that: "No agreement by any employee to waive his rights to compensation under this law shall be valid." In section 15 of said article we find that: "In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board. This section shall be construed as excluding any other character of lump sum settlement except as herein specified." Section 18 of said article expresses the intent and purpose of the law, as follows: "It is the purpose of this law that the compensation herein provided for shall be paid from week to week and as it accrues and directly to the person entitled thereto, unless the liability is redeemed as in such cases provided elsewhere herein." Section 5 of article 8307 provides that: "All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the board. * * *" Also in section 12 of article 8307 we read: "* * * Where the liability of the association or the extent of the injury of the employee is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties."

These provisions clearly indicate that the adjustment of compensation claims arising under the statute is intrusted primarily to the Industrial Accident Board, and that a claimant and the association cannot agree among themselves so as to deprive the board of its jurisdiction.

This is no longer a debatable question, as the quoted provisions of the statute have heretofore been construed to prohibit all settlement contracts between beneficiaries and compensation insurers, unless approved by the Industrial Accident Board. See Employers' Indemnity Corp. v. Woods (Tex. Civ. App.) 230 S. W. 461; same case by Commission of Appeals 243 S. W. 1085; also Indemnity Insurance Co., etc., v. Jones (Tex. Civ. App.) 299 S. W. 674. We therefore overrule all assignments in relation to this matter.

■ Prior to the announcement for trial, appellant moved the court to appoint a disinterested competent physician of its own choice to examine appellee, as provided by the statute. The court refused the motion, and at the conclusion of the evidence the motion was renewed, with like result, but in overruling the same, the court said: "The defendant's motion for the court to appoint a physician of its own choosing to examine the plaintiff is

denied, as was a similar motion made by the defendant prior to the taking of testimony in the case. The court stated to counsel for the defendant in overruling the first motion made that he would grant a motion of the defendant, and appoint a physician for such purpose, to be selected by the defendant as provided in the Act of the 42nd Legislature Regular Session, which reads as follows: (The court here quotes the statute referred to.) The court now says to counsel for the defendant in overruling the motion as framed, that the court will grant a motion of the defendant and appoint a physician of the defendant's own choosing for the purpose requested.''

The facts bearing upon this issue are these: Appellee was injured January 28, 1930; immediate notices of the accident were given as provided by statute; appellant assumed liability, and prior to March 31, 1930, paid appellee compensation amounting to $173.09; thereupon appellee returned to his employment with Smith Bros., Inc., remaining until some time in July, 1930, during which time he was paid $30 per week wages as before. He testified that he did not go to work, but just "sat around"; while evidence for appellant is to the effect that, after returning on March 9, 1930, appellee worked until some time in July, when his services were no longer required, but that he was not let out because of physical disability. On March 29, 1930, about the time appellee resumed his position with Smith Bros., Inc., Dr. Dexter H. Hardin, company physician who had treated appellee, made final report diagnosing the injuries as concussion of brain, trauma to brachial nerve branches and to left shoulder joint, that appellee had, at that time, recovered and was capable of doing the same work as before being injured, and that he had suffered no permanent injury. After appellee's services with Smith Bros., Inc., ended in July, 1930, White & Yarborough, his attorneys, began, actively, to urge the claim before the Industrial Accident Board, and in this connection furnished report of Dr. John F. Ford, appellee's physician, who, after an examination September 16, 1930, reported that appellee had been rendered totally and permanently disabled, and that the high blood pressure and brain injury will progressively grow worse as time passes. The Industrial Accident Board made an order requiring appellee to be examined November 24, 1930, by Dr. Howard Du Puy, who reported to the board that appellee had suffered no disability to his brain, although he might have headaches or dizziness at times, that he found temporary total disability for approximately six months from the date of the injury, January 28, 1930; and that appellee's left shoulder presented a disability of 20 per cent., which will grow less with time and exercise. The board also had before it appellee's affidavit in which he gave a full statement as to the origin of the accident and the

extent of his injuries, and, upon the record thus made, rendered its final decision December 4, 1930, awarding appellee damages in the sum of $272.76, and ordered appellant to pay same, less the amount previously paid, also less attorneys' fees. Dr. Ford testified that he examined appellee just preceding the trial (January 18–20, 1932) and found him in very much worse shape than when first seen by the witness in September, 1930.

The majority are of opinion, and so hold for the court, that there was no abuse of discretion, on the part of the trial court, in refusing appellant's request to appoint a physician of the court's own choice to examine appellee; hence all assignments relating to this matter are overruled. (To this holding, the writer dissents, and will state his reasons below.) Assignments not discussed have also been carefully considered, but, finding no reversible error, all assignments and propositions are overruled, and the judgment of the court below is affirmed.

Affirmed by the majority.

I assent to all rulings except the action of the majority in overruling the assignments complaining of the abuse of discretion by the court in refusing to appoint a physician, of its choosing, to examine appellee at the time of the trial.

The only worth-while issue in the case relates to the extent of appellee's injuries, and, this being true of so many compensation cases, doubtless furnished the reason for the provision found in section 4 of article 8307 (amended by the 42d Legislature (1931), chapter 102 [Vernon's Ann. Civ. St. art. 8307, § 4]) to the effect that: "The Board [or a court having jurisdiction of a case to set aside an award of the Board] may * * * require any employee claiming to have sustained injury to submit himself for examination before such Board or someone acting under its authority at some reasonable time and place within the State, and as often as may be reasonably ordered by the Board [or court, as the case may be] to a physician or physicians authorized to practice under the Laws of this State," etc.

The experts differed widely in their opinions as to the seriousness and extent of appellee's injuries. Dr. Hardin, company physician, reported March 29, 1930, shortly after the accident, that appellee had suffered no permanent injury and would be able to resume normal labor about April 10, 1930; Dr. Du Puy, the board's physician, reported November 24, 1930, that appellee had sustained only a temporary total disability of approximately six months from the date of the injury, and a 20 per cent. disability to his left shoulder which would diminish with time and exercise; while Dr. Ford, appellee's physician, reported in September, 1930, that

appellee had suffered a total permanent disability.

The board allowed appellee compensation for total incapacity for twelve weeks, ending April 20, 1930, and compensation for permanent partial incapacity (20 per cent. disability to shoulder) for 188 weeks additional. In arriving at its conclusions, the board seems to have been guided largely by the report of Dr. Du Puy, the disinterested expert. Just prior to the trial, in January, 1932, Dr. Ford, appellee's physician, made a re-examination, and on the trial testified that plaintiff had suffered total permanent disability, and was in worse condition than when first examined by him.

In cases of this nature, the courts stress the importance of having the injured party examined by disinterested experts, and I am of opinion that such an examination at the time of the trial was reasonably necessary to a proper ascertainment of the truth in the instant case. In Texas Employers', etc., v. Downing (Tex. Civ. App.) 218 S. W. 112, 119 (writ refused), the court used the following pertinent language:

"When the examination is to be made under the order of the court, it would seem obvious that an examination by disinterested experts chosen by the court, would be more conducive to the ascertainment of the truth than that of physicians selected by the plaintiff's antagonist, whose examination and opinions are more apt to be partisan, and in the ordinary case it is more appropriate to request the court to name the examiners. R. C. L. vol. 14, p. 712; Richmond v. Childress, 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808, 14 Am. St. Rep. 189.

"We are therefore of the opinion that if the facts are sufficient to show that an examination was reasonably necessary to a proper development of the truth of the issues for trial, the defendant ought not to be precluded from complaining of the abuse of the discretion of the court in such matter, merely because it requested the court to appoint physicians, instead of naming the physicians itself in the motion."

Also see Richmond, etc., Co. v. Childress, 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808, 14 Am. St. Rep. 189; Meek v. Wheeler, Kelly & Hagney Inv. Co., 122 Kan. 69, 251 P. 184; Valier Coal Co. v. Industrial Commission, 320 Ill. 69, 150 N. E. 651.

The fact that, within about ten weeks after being injured, appellee resumed his position with Smith Bros., Inc., where he remained for several months, receiving the same wages as before, and apparently contented until his services were discontinued; that at the time of trial about fourteen months had elapsed since appellee was examined by Dr. Du Puy, the disinterested expert appointed by the board; and the damages awarded by the jury being so far in excess of the amount allowed by the board upon substantially the same facts—these, and other facts constituting the record, induce the conviction, on my part, that the trial court committed reversible error in refusing to appoint a competent disinterested physician of its own choosing to examine appellee at the trial, for it is obvious that the testimony of such a witness would not have been amenable to the criticism of being biased, whereas the testimony of any expert selected by the company would have been vulnerable to, and weakened by, such criticism. I think, therefore, that the judgment of the court below should have been reversed, and the cause remanded for further proceedings.

### On Motion for Rehearing.

JONES, C. J.

The majority of this court deems it proper, on appellant's motion for rehearing, to state the reasons that impelled the holding in the original opinion, to the effect that the trial court did not abuse its discretion in refusing to grant appellant's motion to require appellee to submit to a medical examination by a physician chosen by the court. The record shows that the trial court, at the time the motion was submitted, informed appellant's counsel, in effect, that the court would not on its own volition name the physician to conduct the requested medical examination, but, if appellant would name a physician, the court would appoint him and direct the appellee to submit to the examination. Appellant declined to name the physician to be appointed by the court, and the motion was thereupon overruled.

It thus appears that appellant could have secured the desired medical examination by a physician appointed by the court if it had suggested to the court the physician to be appointed, and that the failure to secure a medical examination of appellee, under authority of the court, resulted solely from this refusal of appellant. If appellant had named Dr. A as a competent and disinterested physician to make the examination, and the court had appointed him, such physician would have been the appointee of the court and not the appointee of appellant, and the examination would have been made by Dr. A as a representative of the court and not as a representative of either party. This was the course the trial court offered to pursue, and was not pursued, because of its rejection by appellant.

The procedure to be followed to secure a medical examination of an injured employee is given by certain provisions of chapter 102, p. 175, of the Laws of the Regular Session of the 42d Legislature (Vernon's Ann. Civ. St. art. 8307, § 4). This is an act amending somewhat similar provisions of section 4

of article 8307, R. C. S. 1925, and the provisions pertinent to this inquiry read as follows: "The Board may make rules not inconsistent with this Law for carrying out and enforcing its provisions, and may require any employee claiming to have sustained injury to submit himself for examination before such Board or someone acting under its authority at some reasonable time and place within the State, and as often as may be reasonably ordered by the Board to a physician or physicians authorized to practice under the Laws of this State. If the employee or the Association requests, he or it shall be entitled to have a physician or physicians of his or its own selection present to participate in such examination."

In another paragraph, section 4, supra, reads: "The association [compensation insurer] shall have the privilege of having any injured employee examined by a physician or physicians of its own selection, at reasonable times, at a place or places suitable to the condition of the injured employee and convenient and accessible to him. * * * The injured employee shall have the privilege to have a physician or physicians of his own selection, at the expense of such injured employee, present to participate in such examination."

It must be borne in mind that, while the power to compel a medical examination of an injured employee is given specifically only to the State Industrial Accident Board, the same power is necessarily given to the court in whose forum the case is to be tried on an appeal from the final ruling of such board. In the instant case, therefore, the district court of Dallas county, in which the suit to set aside the award of the accident board was being tried, is vested with the same statutory power with which the board is vested. This power is that the court may require an injured employee to submit himself "to a physician or physicians authorized to practice under the laws of this State." It is our construction of the above provision of this enactment that whether such medical examination shall be required rests exclusively in the judgment of the court trying the cause. If the judgment of the court be that there is no necessity for such examination, and the insurer is not satisfied with the ruling of the court in respect thereto, then such insurer is given a remedy for any injury it may thereby have suffered in the right given in the second paragraph of section 4, supra, to have the court to require the "injured employee examined by a physician or physicians of its own selection." This right of course is given the insurer either when the court declines to direct a medical examination by a physician appointed by the court, or after it has directed such medical examination, and the insurer is not satisfied with the result of such examination.

■ It is the opinion of the majority of this court, that the only reasonable construction that can be given to the provisions of section 4, relating to medical examinations of an injured employee, is that it was the intention of the Legislature to commit entirely to the discretion of the board, or the trial court, as the case may be, the question as to whether a medical examination should be ordered and conducted as the board's, or trial court's, examination, but, in order to safeguard the rights of a compensation insurer against a mistaken judgment on the part of the board, or the trial court, in a refusal of such an examination, the right is given to such insurer to require the court on proper motion to direct the injured employee to submit to an examination by a physician of the insurer's own choosing. As this record discloses that appellant did not attempt to avail itself of the statutory remedy given in the second paragraph of section 4, supra, for any injury it may have suffered by the ruling of the court, on its motion for the medical examination authorized by the first paragraph of section 4, it is in no position to complain of the court's ruling.

If we are in error in the above construction of the provisions of said section 4, we are nevertheless of the opinion that no reversible error is shown by the record in this case. We are of the opinion that the course the trial court offered to pursue in reference to appellant's motion, that the trial court name a physician of its own choosing and direct appellee to submit to an examination by such physician, constitutes a substantial compliance with the provisions of the statute as same are construed by appellant and the dissenting opinion herein.

The trial court's offer was to appoint any physician named by appellant, the mover in the motion for such examination, and to require appellee to submit to the examination by such physician. If appellant had consented to the pursual of this course and named the physician, a medical examination by a physician appointed by the court and held under the court's direction would have been the result. Such physician would not have been the representative of appellant, but would have been the representative of the court. We believe that the objection of appellant to name a physician for the court to appoint, at the request of the court, to the effect that the mere fact that such physician was named by appellant would weaken the probative force of his testimony, is too shadowy for consideration, and certainly not sufficient to cause a reversal of this case on the ground of an abuse of discretion.

Appellant, as well as the dissenting opinion in this case, relies upon the case of Texas Employers' Insurance Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112, 119. A careful reading of the opinion, we think, clearly discloses that it does not announce a doctrine contrary to the views herein expressed. This is shown by the following excerpt: "It is probably true

that the association, before it could complain of the action of the court in refusing to order an examination under its general discretionary authority, would be required to allege that it had requested an examination and been refused. * * * But when the proceeding has reached this stage, that is, request for examination by physicians named by the defendant, has been made and refused by the plaintiff, we think the defendant may then apply to the general power of the court, rather than insist on an examination being made by physicians of its own choosing. * * *"

We are therefore of the opinion that appellant's motion for rehearing should be overruled.

Overruled.

LOONEY, J., dissents.