No. 29,725.

FERN LAMB, *Appellee*, v. THE LIBERTY LIFE INSURANCE COMPANY, *Appellant*.

(295 Pac. 698.)

Opinion filed February 7, 1931.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen*, all of Topeka, for the appellant.

*Thomas D. Winter*, of Girard, and *E. W. Patterson*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case involves the liability of the Liberty Life Insurance Company to Fern Lamb upon an accident policy issued to her husband, Alonzo Lamb, who was accidentally killed in a collision at a street intersection while driving an automobile. Plaintiff was named as beneficiary in the policy, and in this action she procured a judgment for $1,000 against defendant, from which it appeals.

The policy contained a provision that it did not cover any loss resulting from the performance of the duties of a mechanic in repairing, overhauling or testing an automobile. There was no dispute in the evidence as to the issuance of the policy or as to the death of Lamb caused by the collision, but the contention of defendant was that he was a mechanic and at the time of his death was performing the duties of a mechanic in testing the automobile, and therefore was not within the conditions of the policy. Another defense urged was that at the time of the accident Lamb

was driving at a speed which was in violation of an ordinance offered in evidence, prohibiting the operation of an automobile within the city at a greater speed than twelve miles per hour and at a crossing and intersection a speed not exceeding six miles per hour, and that by virtue of these violations he was within the exception named in the policy.

First, there is a contention that the court erred in failing to require the jury to answer special questions in accordance with the testimony. Under the pleadings the questions asked related to an important issue in the case. Abundant evidence was produced on that issue at the trial upon which the jury could and should have answered and determined the questions asked. The questions and answers follow:

"1. At what rate of speed was Lamb's car going at the time of the collision? A. Undetermined.

"2. At what rate of speed was Lamb's car going when it crossed the intersection of Ozark and St. John streets at the time of the collision? A. Undetermined.

"3. At what rate of speed was Lamb's car traveling when at the highest rate of speed at which it traveled on Ozark street toward St. John street prior to the accident? A. Undetermined.

"4. Was Lamb driving with the cut-out of his car open? A. Yes.

"5. Was Lamb driving the car in which he was riding at the time he was killed? A. Yes.

"6. What was Lamb's purpose in driving the car at the time he was killed? A. Undetermined."

There had been a previous trial of this case which resulted in a verdict for plaintiff, and in an appeal the judgment was reversed upon the ground that the court erred in not requiring the jury to make proper answers to special questions based on evidence that had been presented. (*Lamb v. Liberty Life Ins. Co.*, 129 Kan. 234, 282 Pac. 699.)

On the last trial there was a like defect in the procedure. As to speed there was direct evidence by an eyewitness who was standing near the place of the accident, which was in substance that Lamb approached the crossing at a speed of twenty-five miles an hour, that he slowed down at the crossing to a speed of about twelve to fifteen miles per hour. He also said that he noticed a big yellow car occupied by tourists approaching the crossing from the west and he stated that it seemed to him the yellow car could not be slowed down enough to avoid a collision with Lamb's car

in the middle of the intersection, and that Lamb then tried to go around the yellow car, but he failed, and the left front wheel of the yellow car hit the left hind wheel of Lamb's car. A woman was crossing the street about the time of the collision and said that she saw the car from the west was traveling at a high rate of speed and did not slow up at the crossing. She did not notice the direction from which Lamb's car was coming and gave no estimate of the speed of his car. There was evidence before the jury as to the position and condition of the cars immediately after the collision which had some bearing on the speed they were going at the time of the collision. As to the employment of Lamb, and whether he was a mechanic testing the car when the accident occurred, there was testimony by the owner of the garage that Lamb was not employed as a mechanic but simply as a general man around a garage. No testimony is found showing that he was testing the car at the time of the accident. The absence of that testimony would be to the disadvantage of the one upon whom rested the burden of proof in that respect, and presumably a proper instruction on the subject was given. It appears that a man named Williams had applied to the owner of the garage for the use of a car to go to a point 104 miles distant to take some articles to his daughter. When Williams came to the garage Lamb was under the car and doing something to it. Afterwards he filled the gas tank and asked Williams to step in and take a ride, and Williams did so, and was in the back seat, but Lamb did not state the purpose of the ride, nor did Williams notice the car coming from the west, and did not know that a collision was imminent until it happened. The car had not yet been turned over to Williams for his use, and Lamb said nothing to him to the effect that he wanted to test the car out. In view of the fact that there was competent evidence upon each of the questions which the jury answered, "undetermined," no reason is seen why definite answers were not given. The questions were within the issues of the case. The court had approved and submitted them to the jury with the direction to make findings thereon. They were important in determining whether or not there had been violations of the speed law which precluded a recovery on the policy. Competent evidence was given upon the questions. The defendant had a right to have the questions submitted to and answered by the jury. (*W. & W. Rld. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362. See,

also, *Lamb v. Liberty Life Ins. Co.*, supra.) The jury were called to determine these and other important questions of fact and were under a bounden obligation to answer them. The jury cannot be permitted to evade that duty by coming in with a statement of "undetermined." Their answers simply reported to the court that they had not determined vital questions of fact which it was their duty to determine, and upon which there was evidence to make a determination one way or the other. It is suggested that the jury may not have believed the testimony that was offered on the subjects, but that is no excuse for abdicating their functions as jurors and leaving the questions undetermined. It is also suggested that some of the evidence on the questions was conflicting, but it was the function of the jury to settle the conflicts by direct and candid answers. Until these questions are fairly determined the case cannot be decided, and not being determined, the error is not cured by the general verdict. The record shows that when the jury came in with the questions unanswered the defendant moved the court to require the jury to answer the questions upon the evidence produced. After polling the jury and asking each of them if that was his verdict and answers to the special questions, each juror replied in the affirmative, and thereupon the court denied the motion and discharged the jury. It was the plain duty of the court to have sent the jury back for further consideration of the special questions with the instruction to determine the questions of which they had washed their hands and left undetermined.

For the failure to do so the judgment is reversed and the cause remanded for a new trial.