No. 34,056

TIM CLAWSON and BESSIE CLAWSON, *Appellees*, v. THE WICHITA TRANSPORTATION CORPORATION, *Appellant*.

(84 P. 2d 878)

Opinion filed December 10, 1938.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones, Edward F. Arn*, all of Wichita, *W. D. Hughes* and *A. S. Dickson*, both of Guymon, Okla., for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for the death of a daughter of plaintiffs when the car in which she was riding collided with a bus operated by defendant. Judgment was for plaintiffs. Defendant appeals.

Deceased worked in Wichita. The driver of the car in which she was riding when she was killed picked her up at her place of employment about 6:30 in the evening. He drove east on Murdock street to the intersection of that street with Topeka avenue. As he approached that intersection from the west a bus, operated by defendant, approached it from the south. The bus and the car came together in such manner that the car skidded to the north and east against the north curb of Murdock avenue, turned over once or twice, and finally came to rest a number of feet east of the intersection. The daughter of plaintiffs was killed instantly. The manner in which the collision took place is the subject of this lawsuit.

Plaintiffs in their petition charge defendant with several acts of

negligence, among them that of approaching an intersection without keeping a lookout for other traffic which was approaching the intersection and without keeping a lookout for other cars which had already entered and were proceeding through the intersection. The answer, besides a general denial, accused the driver of the car in which deceased was riding, as well as deceased, of several acts of negligence that were the proximate cause of the collision, among them being that deceased failed to warn the driver of the car of the approaching danger in time to avoid the collision, and was further guilty of negligence in failing to demand that the driver drive the car at a lawful speed and in a careful and prudent manner.

The driver of the car in which deceased was riding testified that as he approached the intersection he was traveling at the rate of about fifteen or eighteen miles an hour; that as he proceeded east he looked to the south; that as he was about in the middle of the intersection he saw the bus entering the intersection; that it was coming at a speed of about thirty-five miles an hour; that the bus came straight north and the front of the bus struck the right rear bumper of the car. He further testified that just as he saw the bus coming he stepped on the accelerator and veered his car to the left; that he was in the intersection when the bus entered; that the front end of his car was already past the east curb line of Topeka avenue. There was other testimony offered, some of which agreed with that of the driver of the car, and some of which contradicted it on the main points.

When the case was submitted to the jury a verdict in favor of plaintiffs was returned in the amount of $2,500. Special questions were submitted to the jury. This appeal turns upon the answers to some of these questions and the failure of the jury to answer certain others. These questions and answers were as follows:

"1. At what rate of speed was the bus moving as it entered the intersection? A. Undetermined miles per hour.

"2. At what rate of speed was the Riley automobile moving (a) as it entered the intersection? A. (a) Undetermined miles per hour. (b) At the time of the collision? A. (b) Undetermined miles per hour.

"3. At the time of the collision was the bus (a) stopped? A. (a) No. (b) Practically stopped? A. (b) Undetermined.

"4. Which of the vehicles entered the intersection first? A. Undetermined.

"5. What, if anything, did Riley do to attempt to avoid a collision with the bus? A. Swerved to left and increased speed.

"6. Was the manner in which the Riley automobile was driven the sole and proximate cause of the collision? A. No.

904

"7. Was Riley guilty of negligence which directly and proximately caused the collision? A. Yes.

"8. If you have answered the preceding question in the affirmative, state in what that negligence consisted. A. He did not see the bus in time to avoid collision.

"9. What, if any, negligence do you find against the defendant bus company? A. Bus driver did not see car in time to avoid collision.

"10. If you find for the plaintiffs, then state the amount of the contributions made by the said Agnes Clawson to the plaintiffs herein from the time she reached twenty-one years of age until the date of her death. A. Approximately $10 per month.

"11. What, if anything, do you allow plaintiff for—
(a) Funeral expenses: A. $800.
(b) Financial loss by reason of death of Agnes Clawson: A. $1,700.
"(Signed) Harry T. Morgan, *Foreman.*"

It will be noted that the jury answered "Undetermined" when asked what the rate of speed of the bus was at the time it entered the intersection, the rate of speed at which the car in which plaintiff was riding was traveling when it entered the intersection and at the time of the collision, also whether the bus was practically stopped at the time of the collision, and which of the vehicles entered the intersection first. Defendant asked that the jury be required to answer these questions. The trial court denied this request. The defendant filed a motion for judgment notwithstanding the general verdict, also a motion for a new trial on various grounds, among them being the refusal of the court to require the jury to answer questions 1, 2, 3b and 4. These motions were overruled. Defendant appeals.

The argument on this appeal is that defendant is entitled to a new trial on account of the failure of the jury to answer these questions. The position of plaintiffs is that the jury by its general verdict in favor of plaintiffs, and by answering question No. 6 as it did, settled all the questions in the case in favor of plaintiffs. It will be noted that the jury when asked what, if any, negligence it found against the defendant, answered, "Bus driver did not see car in time to avoid collision." Plaintiffs argue that this in effect finds the defendant guilty of the negligence charged in the petition, that is, "Approaching an intersection without keeping a lookout for other traffic which was approaching said intersection from other directions, and particularly from the west, and without keeping a lookout for other traffic which had already entered and was proceeding through said intersection;" and that once the defendant was convicted of that act of negligence it did not matter which vehicle entered the intersection first, the rate

of speed the vehicles were traveling or whether the bus was stationary at time of the collision. Authorities where this court has held that the failure of the jury to answer certain questions where the answers to other questions compelled a judgment was not grounds for a new trial are cited and relied upon.

The trouble with that argument as applied to this case is that the questions the jury refused to answer in this case are bound up with the question of whether or not the defendant was guilty of the negligence found. Just how the jury could find that defendant did not keep a proper lookout when it could not find which vehicle entered the intersection first, or the speed of the respective vehicles, is not readily discernible to us. All these matters were based on disputed testimony.

The purpose of special questions is discussed in a manner upon which we cannot improve in *Morrow et al. v. Comm'rs of Saline Co.,* 21 Kan. 484, and there the court said:

"Turning now to the special questions, we find that to several the jury simply answered, 'Don't know.' We have had occasion heretofore to refer to the irregularity of such answer. Answers should be direct and positive. A case is to be tried upon the evidence, and, according as an alleged fact is or is not established by that evidence, it does or does not, for the purpose of that case, exist.

"The main object of special questions is to bring out the various facts separately, in order to enable the court to apply the law correctly, and to guard against any misapplication of the law by the jury. It is matter of common knowledge that a jury, influenced by a general feeling that one side ought to recover, will bring in a verdict accordingly, when at the same time it will find a certain fact to have been proved which in law is an insuperable barrier to a recovery in accord with the general verdict. And this does not imply intentional dishonesty in the jury, or a failure on the part of the court to instruct correctly, but rather a disposition to jump at results upon a general theory of right and wrong, instead of patiently grasping, arranging, and considering details. Scarcely any jury will, when questioned as to a single separate fact, respond that it exists, without some sufficient evidence of its existence. Its response will, as a rule, be correct, if direct, and if not correct, then evasive and equivocal. And such evasive and equivocal answers always cast suspicion on the verdict. The suggestion springs almost involuntarily that the answers are thus evasive and equivocal from an unwillingness on the part of the jury to stultify themselves so far as to say that the facts were or were not proved, mingled with a fear that a direct and positive answer will avoid the effect of the general verdict they have returned. We do not mean to affirm that this is always the case, or that, in fact, such were the motives that influenced the action of this jury; for sometimes, doubtless, the jury are really uncertain as to the fact, and at the same time their verdict should be

in favor of the one party, whether the fact did or did not exist. It is therefore a right of a party to have a direct response to the questions." (p. 503.)

Applying the reasoning of that opinion to the facts in this case, it would seem that this was a case where the jury determined to find for the plaintiffs without taking the responsibility of examining all the facts upon which that finding must of necessity be based. Indeed, outside of the evidence in the case as to the speed of the car and of the bus, and as to which one entered the intersection first, we see no evidence of a failure of the driver of the bus to keep a proper lookout. There was evidence on all these points. It was contradictory, to be sure, but it was the duty of the jury to resolve it one way or another and to answer these questions. (See *Lamb v. Liberty Life Ins. Co.*, 132 Kan. 383, 295 Pac. 698.) The failure of the jury to answer these questions evinces a lack of appreciation of its duty. The defendant was not accorded a fair trial of the issues in the case. Such a verdict should not be permitted to stand.

Another manifestation of this attitude on the part of the jury was the fact that it allowed an item of $800 for funeral expenses when the evidence of plaintiffs showed an expenditure for this item of only $305.30. This difference was remitted voluntarily by plaintiffs so that it is no longer a part of the judgment, but this remittitur could not obviate the fact that the finding of the larger amount by the jury is an indication of its failure to have a proper idea of its duty.

The judgment of the trial court is reversed with directions to order a new trial.