No. 35,313

NICK MERRILL, *Appellee*, v. THE FARMERS' ALLIANCE INSURANCE COMPANY, *Appellant*.

(122 P. 2d 776)

Opinion filed March 7, 1942.

*Otis S. Allen,* of Topeka, argued the cause, and *George S. Allen,* of Topeka, was on the briefs for the appellant.

*A. M. Fleming,* of Garden City, argued the cause, and *Wm. Easton Hutchison* and *C. E. Vance,* both of Garden City, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action upon a fire insurance policy. A trial by jury resulted in judgment for plaintiff. Defendant has appealed.

The pertinent portions of the pleadings may be summarized as follows: Plaintiff in his petition, filed October 20, 1940, alleged that defendant, The Farmers' Alliance Insurance Company, of McPherson, Kan., is a corporation organized and existing under the insurance laws of this state; that about February 24, 1937, in consideration of the payment of a stipulated premium, plaintiff and said defendant entered into a contract in writing whereby defendant insured plaintiff against loss or damage by fire of a certain shingle-roof frame produce barn, situated on a described thirty-acre tract of land in Finney county, to the amount of $750, for a term ending February 24, 1942; a copy of the insurance contract was attached; that about July 27, 1940, while the contract of insurance was in

force, the building was completely destroyed by fire, without criminal fault on the part of plaintiff; that immediately thereafter plaintiff notified defendant insurer of such loss and demanded payment of the sum of $750, but the defendant insurer denied all liability as the result of such loss, claiming that the contract of insurance was cancelled July 6, 1940, by virtue of a written notice which the insurer claimed was mailed to plaintiff, which purports to read as follows:

"Policy Endorsement

"Policy No. 322376    Insured, Nick Merrill

"This endorsement issued on condition that said policy is in full force and does not waive any of the provisions, conditions or stipulations of said policy, except as expressed hereon.

"Conformable with the request of our inspector, we hereby cancel the $750 fire and the $693.70 wind and hail coverage on the Produce House.

"Return premiums $3.68.

"Effective date July 6, 1940.

"Farmers Alliance Insurance Co.,<br>"By H. J. Ferguson   (Signed),<br>"Secretary."

"Plaintiff alleges that no such notice was ever mailed to him and no such notice of such import was ever at any time or in any manner by plaintiff received"; that plaintiff has performed all conditions encumbent upon him to be performed; that the reasonable value of the building was in excess of the amount of the insurance, and the prayer was for judgment for $750 and cost of suit, including a reasonable attorney's fee.

Defendant in its answer admitted plaintiff's residence and its corporate existence as alleged, and that it executed a policy of insurance on a certain shingle-roof produce barn, situated upon the tract of land described, in the amount of $750, and alleged that at the time the building burned plaintiff was not insured under the policy against loss by fire, for the reason the policy provides: "It is stipulated and agreed . . . if the premises described shall be occupied for other than farm purposes . . . this policy shall be null and void," and alleged that at the time the insurance policy was issued the building was represented to be and was occupied as a farm produce barn, and at the time of the fire the building was occupied as a roadhouse where bottled goods, sandwiches and other things were served and sold; that the policy further provided:

"This company reserves the right to cancel this policy, or any part thereof,

by giving five days notice to that effect to the insured, and if the premium has been paid, making a tender of the unearned premium such notice of cancellation and tender of unearned premium to be made in person or by mail addressed to the insured's post-office address";

and alleged that several days prior to July 6, 1940, defendant was advised of the change of occupancy and use of the building, and notified insured that the company did not insure buildings so occupied, and that it intended to cancel the policy insofar as that building was concerned, and that on July 6, 1940, defendant sent by United States mail, in an envelope addressed to the insured at his post-office address as shown in his application, said envelope being duly stamped with the required amount of United States postage, a notice of cancellation of said policy in words and figures as set out in the petition; that defendant also enclosed therewith the unearned premium on the policy in the amount of $3.65, being the amount of the premium for the unexpired term of the policy, insofar as it insured that building. A copy of the application on which the policy was issued was attached to the answer. It was alleged that the policy further provided:

"If the property or any part thereof shall hereafter become mortgaged or encumbered . . . this policy shall be null and void"; and "that on March 3, 1938, the plaintiff executed a mortgage on said premises in the amount of $720.00. Said mortgage being given to J. W. Brennaman."

The prayer was that defendant have judgment for costs.

In his reply plaintiff admitted he executed a mortgage to one J. W. Brennaman mentioned in the answer, but alleged the indebtedness evidenced by the mortgage was a lien upon the property at the time the application for insurance was made; denied generally and specifically all other allegations of the answer, and alleged the application for insurance was prepared by a duly authorized agent of the insurer, and if plaintiff failed to answer any material question in the application it was because the same was not called to his attention by the agent of the insurer, and if he violated any of the provisions of the insurance policy in any way it was unintentional on his part; that the policy was never delivered to plaintiff by the insurer nor was he given an opportunity to examine it, but that the same was delivered to the Federal Land Bank at Wichita; and further alleged that about the month of May or June, 1940, the defendant insurer paid plaintiff a hail loss under the policy, and at that time the duly authorized agents of defendant were fully in-

formed of the use made of the premises in question, and at that time orally stated that if the insurer saw fit to change the insurance contract the insurer would notify plaintiff before such change was made so as to enable him to obtain other insurance; that plaintiff was never notified of any desire on the part of the insurer to change the insurance contract until after the fire loss, and the insurer then based its refusal to pay upon a purported notice to cancel the insurance in part, as set out in plaintiff's petition; that the insurer, knowing the terms and conditions set forth in the insurance contract, knowing the facts as to the use being made of the property and of the oral promise made to plaintiff by the insurer, and knowing the existence of the indebtedness evidenced by the mortgage to J. W. Brennaman, not only at the time of making the application for insurance but at the time the insurer claims to have given the notice of cancellation, retained the insurance premiums and failed to cancel the insurance and continued the same in force, and that the insurer is estopped and precluded from denying liability; and plaintiff asked for judgment as prayed for in his petition.

The policy and application therefor, attached to the pleadings, disclose that the losses insured against in one policy were fire and lightning, wind and tornado, and hail, for each of which a separate premium was computed for the term of the policy, which was five years from its date, February 24, 1937. The amount of the insurance for each type of loss was, $2,000 on the dwelling, $1,000 on the contents of the dwelling, $1,000 on shingle-roof concrete potato shed, and $750 on a shingle-roof frame produce barn, all situated on a specifically described thirty-acre tract of land. The application disclosed the real property was mortgaged to the Federal Land Bank at Wichita, and a mortgage clause of the type the Land Bank uses was attached to the policy. The premiums as computed aggregated $183.25, for which the insured executed his note to the insurer and promised to pay the sum "at such time and in such installments as may be called for by said company." The policy states there was a first payment of $54.98. The record does not disclose what other installments were asked for or paid, except that on February 15, 1941, the insured paid an installment called for in the amount of $26.26. The statement indicates that this was called for upon fire and lightning in the sum of $4,000 and wind and tornado in the sum of $3,921. There is no contention that other installments, if requested, were not paid.

Plaintiff testified that he owned and lived on the thirty-acre tract of land described in the policy and had his house, barn, potato barn, chicken house, pumping plant, and storehouse that burned, on the tract; that the building destroyed by fire July 28, 1940, cost $1,500; that he insured through Henry Weldon as agent; that there was just one policy covering all the property; that he had never seen the policy, it having been sent to the Federal Land Bank; that at the time the building burned it was used as a roadhouse where sandwiches, Coca-Cola and soft drinks were sold and where people danced, and was kept open until one or two o'clock at night. At the time the insurance was written it was used to store onions and other farm produce, no dancing was had, or sandwiches sold; he sold produce in front of the building; it was kept open until seven or eight o'clock; that in June, 1940, the company paid a hail loss on other buildings insured by the policy. At that time he had a talk with the representative of the company.

"He said he rent that building and he said he going to tell the company maybe he no like that kind of business, and I told him all right, you send the letter to the company and if they no want to insure it I insure it with some other company. After that time I never did see more of that man."

On cross-examination respecting that he testified:

"After one or two weeks, something like that, the company send the check, and Miller bring it out. I been half mile west of the house, and at that time he said he was going to send the letter to the company and find out whether he was going to keep that building insured, and I told him if that company no like to take care of it, I find a company that insure it. He told him the company would not insure 'that kind of business.' He told me 'that you rent this building that kind of business, that's dangerous.' 'Well,' I told him, 'all right, you send letter to company, you find out company no take care of it, and I find Henry Weldon, he got another company; I insure some other company."

He further testified that he never received any notice of cancellation or a letter enclosing a check for the returned premium. He gets his mail just west of the burned building from a mailbox. There are six or seven mailboxes there. The postman puts his mail in the box; he or his son gets the mail. He testified he put a mortgage on the building in favor of Mr. Brennaman and he told Henry Weldon about that. The Brennaman mortgage was for improvements made on the premises; that he used that money to pay the lumber bill on the burned building.

Plaintiff further testified that after the fire he found out from Mr. Weldon and Mr. Miller, who appear to have been operating together, that the company said they didn't owe him anything.

"Mr. Miller told me their company sent me registered letter; he sent $3.68. I told him I never get it. After three or four days he said he sent me a straight letter, and I said I never get it."

Plaintiff's son, Mike Merrill, testified that he lived at home and that he occasionally got the mail; that he never took a letter out of the box that appeared from The Farmers' Alliance Insurance Company at any time.

Everett Miller testified that he was in the insurance business and was an agent of The Farmers' Alliance Insurance Company. He saw the plaintiff about June 13 and delivered a check from The Farmers' Alliance Insurance Company to him. He had a conversation with plaintiff about the building that was later destroyed. The plaintiff and an adjuster were present. He told plaintiff:

". . . that the insurance on the roadhouse was void, but that he would notify the company and let him know definitely later about it. Merrill stated that if it was canceled, he wanted to have some other insurance and it was agreed he would be notified in the event he wanted to do so. The adjuster told him that the policy was void but he would notify the company and let him know definitely later."

He did not see the plaintiff again until after the fire. Plaintiff also introduced a letter from the company to plaintiff's attorneys which reads as follows:

"Policy #322736, Nick Merrill.

"This will acknowledge your letter of July 31 stating that Mr. Merrill has asked you to report a fire loss under the above policy on which our local agent informs you an attempt was made to cancel the policy and return the surplus premium but that Mr. Merrill claims he never received any such notice of cancellation or any return of the premium.

"For your information, beg to advise that the records are very clear as to the entire transaction which I am glad to enumerate as follows:

"In the investigation and adjustment of a hail claim some time in June our adjuster reported that the building insured as a produce barn was being used as a road house serving bottled drinks, sandwiches and obviously this usage voided the policy as to the insurance on this particular building even had no cancellation been effected.

"However, the company did on July 6, issue and mail to the named insured at Garden City, Kansas, an endorsement cancelling the fire, wind and hail insurance coverage on the produce house and enclosed check for $3.68 being the return premium for the unexpired term of this amount of insurance.

"The policy provides five days interim between the date of notice of cancellation and the effect of such cancellation which would have made the cancellation effective as of July 11 at noon. It is our understanding that the loss occurred on the 28 day of July."

Defendant's demurrer to plaintiff's evidence was overruled. De-

fendant asked leave to amend the last paragraph of the answer pertaining to the mortgage of $720 given to J. W. Brennaman by inserting after the words "720" the words "without the knowledge and consent of the defendant." Plaintiff did not consent to this and the court took the request under advisement. Without making the amendment, defendant called H. J. Ferguson, secretary of the company, as a witness and asked him several questions with respect to the insurer's knowledge of the mortgage to Brennaman. Plaintiff's objection to each of these questions was sustained, and this occurred:

DEFENDANT'S COUNSEL: "I don't understand the reason for that objection, Your Honor.

THE COURT: "I am sustaining those objections on the ground that it isn't pleaded; the facts are not pleaded that would void the policy on that ground; it is therefore not within the issues."

Later the court made the following statement:

"The court decides upon further consideration to change its ruling denying the defendant insurance company's request for leave to amend its answer to show that the mortgage given to J. W. Brennaman, as alleged in the answer, was given without the knowledge or consent of the defendant company endorsed on the policy. The plaintiff will be given leave, if such amendment is made, to amend its reply on that issue by alleging a waiver of the forfeiture of the policy by reason of the giving of such mortgage by alleging receipt and acceptance by the defendant company of installments of premium to continue the policy in force after notice and knowledge of the existence of said mortgage referred to in the defendant's answer without endorsement of such consent upon the policy. Upon such amendments being made the court will hear the evidence offered by the defendant company which was excluded by the rulings of the court on the point as to when the defendant company first learned of the existence of the Brennaman mortgage, counsel for defendant having asked that question of the secretary of the company and objection of the plaintiff having previously been sustained. The ruling sustaining said objection is withdrawn and the court will hear the evidence proffered."

After this ruling by the court defendant did not amend its answer and no further questions were asked of any witness respecting the Brennaman mortgage.

Mr. Ferguson, secretary-treasurer of the defendant insurer, testified that early in July, 1940, the company learned that the building in controversy was being used as a roadhouse and sent plaintiff a regular cancellation notice in the form of an endorsement cancelling the insurance on the building insured as a produce barn. The notice was sent by mail and deposited in the post office at McPherson, Kan., accompanied by a letter, and enclosed was a draft for $3.68. A

copy of the endorsement was sent to the Federal Land Bank and another copy sent to the Weldon Insurance Agency at Garden City, local agents of the company. The endorement and check were included in an open-faced or window envelope in which the letter was simply addressed and inserted in the envelope with the address of the company printed in the upper left-hand corner of the envelope. All drafts issued by the insurer are registered and numbered consecutively, and the draft register of July 6 showed the draft to the appellant in the sum of $3.68 as having been issued and registered on that date. The draft sent to plaintiff never has been cashed, nor was the envelope in which it and the letter enclosed ever returned to the company.

James Greenleaf testified he was formerly an investigator for the insurer and investigated with Miller the hail loss on plaintiff's property. At that time he inspected the building and discovered that the building described as a warehouse was being used as a roadhouse, and at that time he told plaintiff that that fact voided his policy; that the use increased the hazard and there was a special rate for that kind of insurance, and that buildings so occupied were on the prohibited list of The Farmers' Alliance Insurance Company; that he had no insurance on that building; that the insurance on that building was void; that plaintiff said he wanted to get insurance, and the witness told him he didn't know whether any company would carry it, but would see if they wanted to charge the proper rate and carry it. He further told plaintiff that the prohibitive insurance on that building did not affect the hail loss on the dwelling house. Mr. Miller, who was with Greenleaf on that occasion, testified that the facts testified by Greenleaf were as he recollected them, and that he told plaintiff he would see him again and let him know definitely. Miller also testified to having received a copy of the letter of transmittal sent, together with the cancellation notice.

The jury returned a general verdict for plaintiff and answered the following special question:

"1. Did the defendant, The Farmers Alliance Insurance Company, on July 6, 1940, mail to the plaintiff by United States mail an envelope addressed to Nick Merrill at Garden City, Kansas, with postage prepaid, in which was enclosed a copy of defendant's exhibits D and E and in addition a check or draft for $3.68? A. No."

The exhibits referred to in the question were the notice which appellant claims to have sent cancelling the insurance on the building destroyed by fire and the letter which accompanied it. Defendant

moved to set aside the special finding of the jury and to set aside the verdict and for judgment notwithstanding the special finding and the verdict. This motion was considered by the court and overruled. Defendant also filed a motion for a new trial, which was considered and overruled, and judgment was rendered for plaintiff in harmony with the general verdict.

Counsel for appellant in their brief say:

"The defendant denied liability on the ground that the policy provided that it would be void if the premises described should 'be occupied for other than farm purposes,' or 'in case any change take place in the possession of the property,' or 'if the property or any part thereof shall hereafter become mortgaged or encumbered.'"

The statement is slightly inaccurate. Hereinbefore we summarized defendant's answer. No contention was there made that the policy was void on the ground that a change had taken place in the possession of the property. The record does not disclose that point was ever referred to in the trial court. In this case the insurance company recognized the insurance as being in force on the produce building as well as on the other property on July 6, 1940, when it made out a notice to cancel the policy on that building, which if served upon the defendant would itself have continued the insurance in force for five days thereafter, and this is the view taken by the defendant in its letter to plaintiff's attorneys before the action was brought.

It was pleaded that the policy was void on the ground the premises were occupied for other than farm purposes. It has been said the word "premises" has no definite legal meaning. In proper usage it has come to mean land and tenements, land and its appurtenances, the grounds immediately surrounding a house, or a piece of real estate, but it has been used to mean a building, or part of a building, a distinct locality. See 49 C. J. 1327 to 1330 and the many cases collected in 33 Words and Phrases 345, under the title "Premises." In *Winchel v. National Fire Ins. Co.*, 129 Kan. 225, 282 Pac. 571, it was applied to the farm upon which the insured's house was situated as well as to the house itself. Perhaps we need not determine the precise meaning of the word as used in this policy, but certainly it did not mean that if one of the buildings should be used for other than farm purposes the entire policy would be void; and it is clear defendant never so construed it. When its agent and adjuster complained to plaintiff about the use made of the one building plaintiff

was specifically told that such use did not affect the insurer's liability for the hail loss on other buildings insured by the policy, and soon thereafter defendant actually paid the hail loss on such buildings. In the notice of cancellation which defendant claims to have sent to plaintiff, and copies of which it did send to the mortgagee and to its agent, there was no contention that the policy itself was void. Indeed, it was recognized as being in force then and later in February, 1941, when defendant made and collected an assessment for the premium on the policy. There was no time prior to the filing of the answer in this case that defendant ever contended the policy was void because of the use made of the one building. Certainly appellant cannot seriously contend that the policy was void for the payment of losses and valid for the collection of premiums.

The policy contained a provision in effect that it would become void if the property, or any part thereof, "shall hereafter become mortgaged or encumbered." Defendant in its answer pleaded that provision in the policy and alleged that after the policy was issued plaintiff had mortgaged it to one Brennaman. In his reply plaintiff alleged that the encumbrance represented by that mortgage was on the property at the time the application was made and the policy issued, and with full knowledge of that fact defendant had accepted the premiums and permitted the policy to remain in force. Recognizing that the answer did not plead lack of knowledge or consent of this encumbrance, defendant asked permission to amend it, as hereinbefore stated. After the court had granted defendant permission to amend its answer in that respect, also the plaintiff's permission to amend the reply if he saw fit, and announced its readiness to hear evidence on that branch of the case, defendant made no amendment and offered no evidence on that question. Previously plaintiff had testified that the encumbrance was on the property at the time the application was made and the policy was issued; that he told Mr. Weldon of that fact, establishing at least prima facie evidence of the plaintiff's knowledge of that encumbrance. Since defendant concluded not to reframe the pleadings so that question could be tried out, and in fact did not thereafter refer to the matter in the trial court, it is not in position to insist upon it now.

The only controverted questions tried by the jury pertain to the cancellation of the policy upon the building which later burned. With respect to its right to cancel and the service of notice of cancellation the policy reads:

"This company reserves the right to cancel this policy, or any part thereof, by giving five days notice to that effect to the insured, . . . such notice of cancellation . . . to be made in person or by mail addressed to the insured's post-office address."

Prior to the filing of the action defendant had advised plaintiff's counsel that it had canceled the policy in part by an appropriate notice mailed to the plaintiff. In plaintiff's petition the fact that plaintiff had claimed to do so was alleged, and plaintiff specifically alleged "that no such notice was ever mailed to him and no such notice of such import was ever at any time or in any manner by plaintiff received." In its answer defendant alleged:

"On July 6, 1940, this defendant sent by Uuited States mail in an envelope addressed to the insured at his post-office address as shown in his application, said envelope being duly stamped with the required amount of United States postage, a notice of cancellation . . ." (setting it out).

Plaintiff's reply contained a general denial. In answer to a special question the jury found that defendant did not mail to plaintiff by United States mail an envelope addressed to him at Garden City, Kan., with postage prepaid, in which was enclosed a copy of the notice of cancellation with check for unearned premium. Appellant argues that the court erred in not setting aside the answer of the jury to that question and contends it is against the evidence. Appellant's secretary-treasurer, when testifying to mailing this notice, did not testify that the envelope was "duly stamped with the required amount of United States postage," as alleged in the answer. Why he was not asked that question, since it was specifically pleaded by defendant, or why he did not testify to that fact, is not disclosed. We do note the fact that after the fire defendant's agent first informed plaintiff that the notice had been sent by registered mail, and a few days later stated it was sent by "straight letter." From this the jury might have concluded that defendant's witness was not sure how the letter was mailed. At any rate, the evidence of the mailing of the letter and the payment of postage thereon is not so positive and convincing that the jury and trial court would have to believe it.

There is no contention on appellant's part that there was any personal service of the notice to cancel; neither is it contended that plaintiff actually received the notice, if it was in fact mailed. Appellant argues that it was not encumbent upon it to show the notice was received, citing on this point G. S. 1935, 40-1015. We think

this statute not applicable here for the reason that even if open to the construction appellant contends for it, which we do not decide, it is a statute pertaining to mutual fire and tornado insurance companies. There is no evidence in this case that appellant is such a company; indeed, the application for the insurance and the insurance policy indicate that it is not. Defendant in fact claimed no right to cancel, except by the provisions relating thereto in the policy, at any time during the trial of this case in the court below or prior thereto, so far as we can ascertain from this record. It did attempt to make a cancellation under the terms of the policy; its letter to plaintiff's attorney so indicates. It is true defendant attempted to make the notice effective the day it was served, but in its letter interpreted that as meaning it would be effective five days later. Perhaps it would have been more accurate to have said it would be effective five days after received by the insured. We do not know how they expected defendant to know that, since the policy was with the mortgagee, but this is not very important here. We do not agree with appellant's counsel that if the notice had been mailed it would be effective even though it had not been received by the defendant. The clause in the policy authorizes the insurer to cancel the policy by giving notice "to the insured." It is true the provision authorized the notice of cancellation to be made "in person or by mail"; but this does not say that if the notice is mailed it becomes effective even though it is never received by the insured. The general rule is to the contrary. Crouch, in his Cyclopedia of Insurance Law, Vol. 6, § 1440, after noting some conflict of authority as to whether a notice of cancellation sent by mail must be received before it is effective, says:

"And, as a matter of fact, the weight of authority seems to regard receipt of the notice as a condition precedent to cancellation."

In Vance on Insurance, 2d ed., p. 778, it is said:

"The power to cancel, being derived only from the contract, must be exercised strictly in accordance with the terms of the contract. . . . and it must be given to the insured or his agent authorized to receive such notice."

See, also, 29 Am. Jur. 264; 26 C. J. 138, 139, and cases collected in the annotations in 123 A. L. R. 1008.

We find no error in the record. The judgment of the court below is affirmed.

Hoch, J., not participating.