No. 41,886

RICHARD WAYNE KOEHN, a minor, by Reuben, B. Koehn, his father and next friend, *Appellant*, v. CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, NEBRASKA, a Corporation, *Appellee*.

(354 P. 2d 352)

Opinion filed August 5, 1960.

*John Staley Holden,* of Cimarron, argued the cause and was on the brief for the appellant.

*B. G. Larson,* of Dodge City, argued the cause, and *James A. Williams* and *C. W. Hughes,* both of Dodge City, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover medical benefits under a policy of automobile liability insurance in which the insurance company defends on the ground that the policy was canceled.

The controlling question on appeal is whether actual receipt by the policyholder of the cancellation notice mailed by the insurer is a prerequisite to cancellation of the insurance under the so-called "standard cancellation clause" in the policy.

This so-called "standard form" of policy cancellation clause, insofar as material on this appeal, reads:

". . . This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. *The mailing of notice as aforesaid shall be sufficient proof of notice* . . . the effective date and hour of cancellation stated in the notice shall become the end of the policy . . ." (Emphasis added.)

The case was tried to a jury and resulted in a verdict for the Central National Insurance Company of Omaha, Nebraska, a corporation (defendant-appellee). The trial court ruled on the various questions arising at the trial upon the theory that the policy of insurance was canceled *by mailing* the "Notice of Cancellation" to Reuben B. Koehn, the policyholder. Under this theory the actual receipt of cancellation notice by the policyholder was immaterial.

The appellant contends that before the insurance company can effectively cancel the policy of insurance the policyholder must receive the "Notice of Cancellation." The policyholder claims he did not receive the "Notice of Cancellation." The jury found in answer to special questions that the appellee mailed, postage prepaid, by United States mail an envelope addressed to Reuben B. Koehn at Cimarron, Kansas (the address shown in the policy), in which was enclosed the "Notice of Cancellation." On the question whether Reuben B. Koehn received such "Notice of Cancellation" the jury answered "Lack of evidence," which under some circumstances is equivalent to a negative answer against the party whose

duty it is to establish the affirmative. (*Meek v. Wheeler, etc., Investment Co.,* 122 Kan. 69, 251 Pac. 184; *Pioneer Trust Co. v. Combs,* 123 Kan. 356, 255 Pac. 81; *Darrington v. Campbell,* 150 Kan. 407, 94 P. 2d 305; and *Brittain v. Wichita Forwarding Co.,* 168 Kan. 145, 211 P. 2d 77.) If the trial court was correct as to the law the latter finding is immaterial.

The numerous specifications of trial error will not be treated individually, since they are all resolved by the single question heretofore stated.

The uncontroverted facts, insofar as material herein, indicate that the policy of insurance at issue was purchased by Reuben B. Koehn on July 13, 1957, for a total year's premium of $31.64. He paid $10.54 at that time and agreed to make two monthly payments, one in the amount of $10.54 on August 13, 1957, and a final payment of $10.56 on September 13, 1957. The last two payments were not made and the appellee canceled the policy as of October 7, 1957.

On June 22, 1958, Reuben B. Koehn's automobile was involved in a serious accident and his son, Richard Wayne Koehn (plaintiff-appellant), incurred medical bills as a result thereof in the amount of $420.85 for which this suit was brought.

The appellant relies on *Merrill v. Farmers' Alliance Ins. Co.,* 155 Kan. 31, 122 P. 2d 776. There the action was upon a fire insurance policy issued by the defendant insurance company. The only controverted question tried by the jury pertained to the cancellation of the policy upon the buildings which later burned. With respect to the cancellation and the service of notice of cancellation the policy there at issue read:

" 'This company reserves the right to cancel this policy, or any part thereof, by giving five days notice to that effect to the insured, . . . such notice of cancellation . . . to be made in person or by mail addressed to the insured's post-office address.' " (p. 41.)

There the policyholder alleged that no notice of cancellation was ever mailed to him, and that no such notice was at any time received by him. The answer of the insurance company alleged that on a certain date the defendant sent by United States mail, postage prepaid, a notice of cancellation addressed to the insured at his post-office address as shown in the application. On issues joined a verdict resulted in favor of the policyholder. In the opinion the court said:

". . . At any rate, the evidence of the mailing of the letter and the payment of postage thereon is not so positive and convincing that the jury and trial court would have to believe it.

"There is no contention on appellant's part that there was any personal service of the notice to cancel; neither is it contended that plaintiff actually received the notice, if it was in fact mailed . . ." (p. 41.)

Further in the opinion the court said:

". . . We do not agree with appellant's counsel that if the notice had been mailed it would be effective even though it had not been received by the defendant. The clause in the policy authorizes the insurer to cancel the policy by giving notice 'to the insured.' It is true the provision authorized the notice of cancellation to be made 'in person or by mail'; but this does not say that if the notice is mailed it becomes effective even though it is never received by the insured. The general rule is to the contrary. Couch, in his Cyclopedia of Insurance Law, Vol. 6, § 1404, after noting some conflict of authority as to whether a notice of cancellation sent by mail must be received before it is effective, says:

" 'And, as a matter of fact, the weight of authority seems to regard receipt of the notice as a condition precedent to cancellation.'

"In Vance on Insurance, 2d ed., p. 778, it is said:

" 'The power to cancel, being derived only from the contract, must be exercised strictly in accordance with the terms of the contract . . . and it must be given to the insured or his agent authorized to receive such notice.' " (p. 42.)

It is readily apparent the cancellation provision in the policy before the court in the *Merrill* case is different from the cancellation provision in the policy presently at issue. In the *Merrill* case the clause in the policy authorized the insurer to cancel the policy by giving five days notice "to the insured." In the policy presently before the court the company is authorized to cancel the policy "by mailing to the named insured at the address shown in this policy written notice." But it has the added proviso: "The mailing of notice as aforesaid shall be sufficient proof of notice."

Actually in the *Merrill* decision the jury found specifically that the company had not mailed the notice of cancellation. Therefore, the statement made concerning receipt of the notice was dictum. In the instant case the jury specifically found that notice of cancellation was mailed in accordance with the terms of the policy.

Whether actual receipt by the policy holder of the cancellation notice mailed by the insurer is a prerequisite to the cancellation of the insurance has been the subject of an extended annotation in 64 A. L. R. 2d 982. It is said in the annotation: "A perusal of all the cases in point reveals that there are five different types of policy

provisions dealing with notice of cancellation." (p. 988.) The third type discussed is the provision with which the court was concerned in the *Merrill* case. A review of the cases cited concerning such provision indicates they unanimously support the rule that actual receipt by the insured of such notice is a condition precedent to a cancellation of the policy by the insurer, and that a letter containing a notice of cancellation which is mailed by the insurer but not received by the insured is ineffective as a cancellation. The rationale of this rule is that the requirement of five days' notice, or a similar requirement, is intended to give the insured timely information that the policy is to be canceled, and in order to achieve this objective the notice of cancellation must be received by the insured.

The "standard cancellation clause" with which we are concerned in the instant case is the fourth-type discussed in the annotation, and the question presented has not been directly before the Supreme Court in this state. (The situation must be distinguished from *Wolford, Administratrix, v. Insurance Co.*, 114 Kan. 411, 219 Pac. 263, which concerned the giving of a premium due notice in compliance with the statute relating to the forfeiture of life insurance policies.) An examination of the authorities on this question in other jurisdictions reveals a sharp conflict. It is clear the weight of authority in this country concerning the "standard cancellation clause" holds that actual receipt of the cancellation notice by the insured is not a condition precedent to a cancellation of the insurance by the insurer. A few of the many cases cited and reviewed in 64 A. L. R. 2d at pages 1000 to 1012, relied upon by the appellee, are *Westmoreland v. General Accident F. & L. Assurance Corporation* [1957], 144 Conn. 265, 129 A. 2d 623, 64 A. L. R. 2d 976; *Superior Insurance Company v. Restituto* [1954, D. C., Cal.], 124 F. Supp. 392; and *O'Daniel v. Michigan Mut. Liability Co.* [1950, D. C., Ky.], 88 F. Supp. 339.

The rationale upon which the courts adhering to the foregoing rule base their holding is that the express terms of the contract uphold the sufficiency of a notice deposited in the mail, and that such provision, being unambiguous, must be enforced by the courts as written. It is said that where there is no statute upon the subject, the parties to the contract of insurance may agree as to the form and manner in which notice of cancellation shall or may be given; that when the parties to the contract have so agreed, they

are both bound thereby, and the courts will not attempt to rewrite the contract for them nor interpolate the conditions which cannot be reasonably implied; and that when a cancellation notice is given in the manner provided in the policy, it constitutes sufficient notice, thereby cancelling the policy and relieving the insurer from liability for any loss occurring thereafter. It is said that the parties, by their contract, in effect constitute the government, in its business of operating the mails, the agent of the insured for the purpose of receiving the notice of cancellation. This is, of course, a fiction.

In *Midwestern Ins. Co. v. Cathey* [1953, Okla.], 262 P. 2d 434, the court said:

"There is no ambiguity in the language of the policy as contained in the cancellation provision. Under the very strictest construction of the policy, the contrasting language is not of doubtful meaning. Neither can it be said that the provision is unreasonable or unjust. Under the provision, the assured assumed the risk of receiving the notice when properly mailed to him at the address given in the policy. Under a policy containing the provision involved herein, it would place an unreasonable and unfair burden on the company to say that notice of the cancellation must be actually delivered to the assured. To make such a requirement would be placing additional words in the policy far beyond the actual terms of the policy agreed to by the parties." (p. 436.)

In *Superior Insurance Company v. Restituto,* supra, the court said:

"Parties to a contract may contract on such method of giving notice as they desire and unless public policy is contravened, the contract should be enforced as made. The use of the mails has become too well integrated into our economic and business life for such a public policy question to concern us . . ." (p. 395.)

A minority of the courts have held otherwise. They adopt the view that where the insurance policy provides that it may be canceled by the insurance company by mailing to the insured at the address shown in the policy written notice stating when, after a specified number of days, the cancellation shall be effective, and also specifically provides that the mailing of the notice as aforesaid shall be sufficient proof of notice, the mailing of notice of cancellation alone is not sufficient and actual receipt of such notice by the insured must be shown. Both the States of Oklahoma and Michigan have adopted the minority view in cases arising under specific statutory provisions authorizing cancellation upon "giving to the insured a five days' written notice of cancellation." (*Great American Indemnity Co. v. Deatherage,* 175 Okla. 28, 52 P. 2d 827; *Farm-*

*ers Ins. Exchange v. Taylor* [1952, 10th C. C. A., Okla.], 193 F. 2d 756; *Galkin v. Lincoln Mut. Casualty Co.*, 279 Mich. 327, 272 N. W. 694; and *DeHaan v. Marvin*, 331 Mich. 231, 49 N. W. 2d 148.) In such states, it is said, the statutory provision overrides a clause in the policy which would tend to nullify the legislative intention of giving the insured timely notice of an impending cancellation of his insurance policy, thus permitting him to attempt a substitute coverage if he so desires.

A leading case supporting the minority view without the aid of any statute in Minnesota is *Donarski v. Lardy* [Jan., 1958], 251 Minn. 358, 88 N. W. 2d 7. The State of Iowa in *Selken v. Northland Ins. Co.* [June, 1958], 249 Iowa 1046, 90 N. W. 2d 29, 38, although having a statutory provision similar to that of the State of Michigan, cited *Donarski v. Lardy,* supra, as supporting its position requiring receipt of cancellation notice by the insured under the "standard cancellation clause."

A recent case from California, *Jensen v. Traders & General Ins. Co.* [Oct., 1959], 52 C. 2d 786, 345 P. 2d 1, adopted the majority view under legislation which specifically prescribed the terminology of cancellation clauses, using language not materially different from that employed in the "standard cancellation clause." It was said:

"Had the Legislature not favored this method of cancellation [by mailing], or believed it contrary to public policy, it could and would in so many words have so stated. Instead, it referred to 'mailing or delivery' as equally lawful means of canceling an insurance policy." (p. 797.)

By its decision the California Supreme Court reversed the District Court of Appeal, First District, Division 2 (*Jensen v. Traders & General Insurance Company* [June, 1959], 338 P. 2d 517), which quoted and relied upon the Minnesota case.

While the majority of the courts have said that the contract insofar as it concerns the "standard cancellation clause" is clear and that courts may not rewrite the contracts of the parties, it is difficult to imagine the "standard cancellation clause" here involved, which has given rise to so many interpretations by courts, is clear to a layman, like the appellant. If consistency of interpretation is any criterion, it has not been clear to the courts. Most laymen on receiving a policy of insurance look at the coverages. Their attention is not called to the fine print. In the instant case, the parties did not bargain for the provisions of the contract. Rather, this is a true "contract of adhesion" where the insurance company selected

the language and the insured is "stuck" with it. (43 Colum. L. Rev. 629.)

It must be conceded, as urged by the appellee, that the courts may not rewrite the contract of the parties. However, a well-established rule in this state is that the language of an insurance policy, being that selected by the insurer and for its benefit, must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured. A policy of automobile liability insurance was before the court for construction in *Conn v. Walling*, 186 Kan. 242, 349 P. 2d 925, where it was said:

"At the outset it may be stated it is a well-established rule in this state that where the terms of an insurance policy are open to different constructions, the one most favorable to the insured must prevail (*Samson v. United States Fidelity and Guaranty Co.*, 131 Kan. 59, 289 Pac. 427); or, stated in another way, where a provision of an insurance policy is susceptible of different constructions, it is to be construed most favorably to the insured, and if an insurer intends to restrict its coverage it should use language clearly stating its purpose (*Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711; *Chicago, R. I. & Pac. Rld. Co. v. Aetna Ins. Co.*, 180 Kan. 730, 308 P. 2d 119). It is also an inviolate rule that if provisions in an insurance policy result in ambiguity, inconsistency or uncertainty, forfeiture must be denied, as under those circumstances the provisions of the policy must be construed in favor of the insured. (*Sebal v. Columbian Nat. Life Ins. Co.*, 144 Kan. 266, 58 P. 2d 1108.)" (pp. 245, 246.)

Other cases applying the foregoing rule of construction are *Evans v. Accident Association*, 102 Kan. 556, 171 Pac. 643; *Hoskins v. North American Accident Ins. Co.*, 123 Kan. 731, 256 Pac. 981; *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 44 P. 2d 236; *Baker v. Continental Ins. Co.*, 155 Kan. 26, 28, 122 P. 2d 710; *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571; and *Saul v. Saint Paul-Mercury Indemnity Co.*, 173 Kan. 679, 250 P. 2d 819.

Words employed in contracts of insurance are to be construed according to the meaning of the terms used, and are to be taken and understood in their plain, ordinary and usual sense, so as to give effect to the intention of the parties. Where such words have acquired a peculiar and appropriate meaning in law they are to be construed according to such meaning. (*Youse v. Employers Fire Ins. Co.*, 172 Kan. 111, 238 P. 2d 472.)

It is just as logical to say the parties to the contract under the "standard cancellation clause" heretofore quoted, when its grammatical structure and word meaning is carefully analyzed, con-

templated that the policy holder receive notice of cancellation as it is to say they did not. The words "written notice" are entitled to full consideration since it is such notice that accomplishes the cancellation of the policy. "Notice" means intelligence by whatever means communicated; information; knowledge. (See, Webster's New International Dictionary, Rev. Ed.)

Within the "standard cancellation clause" is the following sentence: "The mailing of notice as aforesaid shall be sufficient proof of notice . . ." Here the words "proof of notice" command attention. This expression contemplates *evidence* to establish knowledge or information of cancellation on the part of the policyholder. The word "sufficient" has been used to modify "proof of notice." Synonyms for the word "sufficient" are enough, adequate, ample and satisfactory, among others.

It cannot be said the expression "sufficient proof of notice" is equivalent to the expression "conclusive proof of notice," although conceivably this might be one interpretation of it. If the interpretation propounded by the insurance company were adopted the above sentence must be interpreted to mean that mailing the written notice conclusively establishes that the policy holder has knowledge or information of the cancellation of the insurance policy. If the expression "sufficient proof of notice" is to have such clear and definite meaning further modifying words must so qualify its meaning, but there are none. We are therefore confronted with language used by the insurance company which is not clear in meaning. It is ambiguous. It is both sound and logical to say "sufficient proof" means something less than "conclusive proof."

While no cases defining the term "sufficient proof" have been found, the words "sufficient evidence" are commonly understood in this jurisdiction to mean such evidence as in amount *is adequate* to justify the court or jury in adopting the conclusion in support of which it is adduced. The term "sufficient evidence" has never been used in the sense of conclusively establishing something, but merely in the sense of supplying the evidence to support a finding in the type of case at hand. The indication in the "standard cancellation clause," that some degree of proof is required to establish notice of cancellation, shows the parties contemplated that some notice of the cancellation of the insurance policy should actually be received by the insured. This is conceded by some courts which adhere to the majority view when they resort to fiction and say the parties, by

their contract, in effect constitute the government, in its business of operating the mails, the agent of the insured for the purpose of receiving the notice of cancellation. By this fiction notice to the agent is notice to the principal. Actually the government has no knowledge whatever of the cancellation.

Therefore, construing the "standard cancellation clause" consistently with the rule of construction heretofore stated—liberally in favor of the insured as to any reasonable doubt in the meaning of the language used therein—it means that mailing is a proper mode of communicating notice of cancellation to the insured, but only gives rise to a presumption entitling the trier of the facts to find that an insured does have notice of cancellation when the company introduces evidence of the mailing of notice. On the other hand, the presumption is rebuttable and would entitle the trier of the facts to find that notice was not received where the insured has testified that the notice was not received. In case the latter fact is found it must be held that the policy was not canceled. The foregoing presumption, however, does not shift the burden of proof, which remains throughout the trial of a case upon the insurance company, to establish that the insured received the notice of cancellation. (See, *State v. Bailey*, 184 Kan. 704, 339 P. 2d 45.) In other words, the presumption, that a notice of cancellation of an automobile insurance policy was received by the insured because it had been placed in the mails by the insurer, fades away in the light of testimony by the insured that he did not receive the notice of cancellation, thereby raising a question of fact to be determined by the trier of the facts. The presumption merely enables the insurance company to establish a *prima facie* case. The foregoing is substantially the reasoning in *Donarski v. Lardy*, supra.

Omitted from the "standard cancellation clause" heretofore quoted is the last sentence which reads: "Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing." The Supreme Court of California in *Jensen v. Traders & General Ins. Co.*, supra, says:

> "It is to be noted that the clause further provides that 'delivery' of such cancellation notice shall be equivalent to mailing, thus making it clear that there are two methods of canceling the policy, one by mailing, and the other by delivering, notice of cancellation to the insured." (p. 791.)

This argument is advanced to show the cancellation clause is clear and unambiguous. In our opinion this sentence has no bearing on

the interpretation of the "standard cancellation clause," and it does not detract from the interpretation we have given the clause. It merely entitles the insurance company to the benefit of the presumption when such means of communication are used to convey notice of cancellation to the policyholder, and authorizes cancellation by means of communication other than mailing in accordance with the terms of the policy.

There is, however, a further and more compelling reason for our view herein. Even if the "standard cancellation clause" were interpreted as propounded by the insurance company, it would be a violation of the public policy of this state.

There can be little doubt that insurance is vitally affected with the public interest. In *U. S. v. Underwriters Assn.*, 322 U. S. 533, 64 S. Ct. 1162, 88 L. Ed. 1440, the following was said about insurance:

". . . Perhaps no modern commercial enterprise directly affects so many persons in all walks of life as does the insurance business. Insurance touches the home, the family, and the occupation or the business of almost every person in the United States." (p. 540.)

The Minnesota court in *Donarski v. Lardy*, supra, quoted the foregoing language and further said:

"Clearly the object of the insured when he buys a policy of the kind involved here is to receive protection in order that he might fulfill his obligations to those he has injured or damaged through the use of his automobile. The provision in the policy providing for notice of cancellation is obviously to give the insured an opportunity to procure other insurance. If the policy can be canceled at any time by merely depositing notice in the mails with no regard to whether or not notice is actually received, then the object of the notice may be completely nullified and there may be no chance of fulfilling the object sought in obtaining the insurance. It may be conceded that persons have the right to freely enter into contracts without impairment of such right. On the other hand, we do not believe that because of this it could be held that there is no limitation upon the mode of cancellation that an insurance company may place in its policy . . ." (pp. 364, 365.)

Our own financial responsibility law (G. S. 1949, 8-701 to 8-721, incl.), and laws upholding the validity of automobile liability insurance where the operator is in violation of the motor vehicle registration law (G. S. 1949, 8-152), or Uniform Operators' and Chauffeurs' License Act (G. S. 1949, 8-270), the law requiring liability insurance as a condition precedent to the issuance of a motor carrier certificate or license (G. S. 1949, 66-1,128), and other

insurance laws indicate a policy strongly favoring the protection of the public in the field of liability insurance coverage for motor vehicle owners, and support our view that the overriding public policy of this state is like that of Minnesota in this respect.

If the public policy of this state were otherwise automobile insurance could be canceled while the insured was away on a ten-day vacation. Or the company could provide in its policy that cancellation could be accomplished by merely posting its intention on a bulletin board in its home office. We do not think the right to enter into contracts without impairment demands such results, particularly "contracts of adhesion."

Turning now to the instant case and looking to the evidence, some of which was excluded by the trial court, it discloses that the policyholder, Reuben B. Koehn, was dealing with the Securities Acceptance Corporation at Dodge City, Kansas, where he had financed the purchase of a 1955 Ford automobile, which he later traded for a 1956 Chevrolet, the vehicle involved in the collision herein. In addition to the financing of the two automobiles on the installment plan, he had an insurance account with this company.

Several weeks after the Central National Insurance Company, appellee, mailed the "Notice of Cancellation" to Reuben B. Koehn, he received a check in the amount of $3.95 dated October 24, 1957, which the appellee introduced in evidence. It was presented as a canceled check endorsed by Reuben Koehn to establish that the pro rata unearned premium was remitted to the policyholder. The check at no place indicates that the insurance policy in question was canceled, nor is there any indication that the sum paid Reuben Koehn by this check related to the insurance policy which is the subject of litigation in this suit. The check is headed "Securities Investment Company." By reason of this refund the appellee contends Reuben Koehn is estopped to deny the cancellation of the insurance policy. We do not agree.

The evidence excluded by the trial court tends to prove that over a period of time, covering the policy period, numerous checks were made payable to Securities Acceptance Corporation for a total of $543.87, paid in satisfaction of the various accounts which Reuben Koehn had with the Securities Acceptance Corporation. Also excluded from evidence was Plaintiff's Exhibit # 13, indicating that Reuben Koehn had settled his account with Securities Acceptance

Corporation insofar as it involved the exchange of automobiles. Opposite the headings "Financing" and "Insurance" in this exhibit appeared three entries: $10.58, $282.30 and $138, respectively, which were included in the "Total Time Price." This exhibit is dated June 3, 1958, and indicates the purchase of the 1956 Chevrolet, for which payments were to be made over a period of twenty-four months in the amount of $70.62 each month to the Securities Acceptance Corporation for the "Total Time Price," less credits indicated in the exhibit. Reuben Koehn testified that it was his understanding that the settlement made as a result of the exchange of automobiles had paid his obligation to Securities Acceptance Corporation for both the vehicle and the insurance.

The record discloses no evidence of any kind that Reuben Koehn received the "Notice of Cancellation," except the evidence of mailing which gives rise to the presumption of receipt. Reuben Koehn and his wife testified that they did not receive the "Notice of Cancellation," and Reuben Koehn testified he did not learn that the insurance company claimed the policy had been canceled until after June 22, 1958, the date his son was injured, when he went to the Securities Acceptance Corporation in Dodge City, Kansas, to report the accident.

The medical bills were stipulated by the parties to be $420.85 and no other damages were sought in the action. Thus, whether judgment should be entered for the appellant or a new trial granted is dependent upon further analysis of question No. 2 submitted to the jury and the answer given thereto. It has heretofore been stated that under some circumstances the answer "Lack of evidence" given by a jury in answer to a special question is equivalent to a negative answer against the party whose duty it is to establish the affirmative. If the answer given by the jury to question No. 2 should be construed as a negative finding, then it is contrary to the general verdict which was for the appellee. Under such circumstances in *Pioneer Trust Co. v. Combs,* 123 Kan. 356, 255 Pac. 81, the general verdict for the defendant was set aside, the judgment reversed, and a new trial directed. There the plaintiff proved a *prima facie* case and the answers to special questions submitted to the jury showed that the defendant failed to prove the facts necessary to constitute a defense.

In *Brittain v. Wichita Forwarding Co.,* 168 Kan. 145, 211 P. 2d

77, an answer to a special question which was uncertain was construed against the plaintiff who had the burden of proof to establish the fact in issue. There a judgment for the plaintiff was reversed with directions to enter judgment for the defendants.

But the evasive answer given by the jury to question No. 2 cannot be construed as a finding against the appellee. This court has held that litigants are entitled to have the jury fairly answer important special questions of fact based upon the issues of the case which were duly submitted by the court, and upon which competent evidence was produced. Under such circumstances, where the court fails upon timely request to require the jury to make complete and candid answers, it is reversible error. (*Lamb v. Liberty Life Ins. Co.*, 132 Kan. 383, 295 Pac. 698; *Railway Co. v. Hale*, 64 Kan. 751, 68 Pac. 612; *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555; and *Clawson v. Wichita Transportation Corp.*, 148 Kan. 902, 84 P. 2d 878.)

In *Meek v. Wheeler, etc., Investment Co.*, 122 Kan. 69, 251 Pac. 184, the appellant invoked the above rule, but the court in answer thereto said that such rule pertains to cases where some competent and trustworthy testimony has been adduced in evidence.

The record in the case at bar discloses that when the jury returned with its verdict, the appellant moved the court to require the jury to give a more definite answer, but the trial court refused. Upon the record presented there was competent evidence upon which the jury could definitely answer question No. 2 one way or the other.

It was the theory of the trial court in submitting question No. 2 to the jury that an answer thereto was material only in one respect. The trial court said:

"Now I am submitting this on the theory that the mailing of notice shall be sufficient proof of notice, with the instruction that they may consider the fact whether or not receipt was had in determining whether there was mailing."

Presumably what the trial court had in mind was the theory adopted in *Allied American Mutual Fire Insurance Co. v. Paige*, 143 A. 2d 508, by the Municipal Court of Appeals for the District of Columbia, where it said:

". . . As Wigmore has pointed out, the presumption of receipt by the addressee, which is created by proof that mail matter was properly stamped, addressed and delivered to the post office, is founded on the supposed uniform

efficiency of the postal service; consequently if the mails are functioning properly, then a failure to receive a certain letter tends also to show that it was in fact never posted. We believe that this is the correct view and accordingly adopt it. Thus evidence of nonreceipt is sufficient to rebut a prima facie case of mailing and create a true issue of fact to be resolved by the trier of facts as to whether the claimed mailing did occur." (p. 510.)

On this appeal, however, we are not concerned with this point, since the jury specifically found that the appellee insurance company mailed the "Notice of Cancellation" to Reuben Koehn as specified in the "standard cancellation clause."

Under the *instructions given* by the trial court to the jury actual receipt of the "Notice of Cancellation" by the policyholder was immaterial after the jury specifically found that the insurer had mailed the "Notice of Cancellation," and it is logical to assume this was the reason for the evasive answer given by the jury to question No. 2.

For the foregoing reasons judgment cannot be entered for the appellant.

Inasmuch as the trial court adopted an erroneous theory in ruling upon the various questions arising at the trial, it erred in the exclusion of evidence, in giving instructions to the jury, in refusing to require the jury to give a more complete answer to special question No. 2, and in overruling the appellant's motion for a new trial. The judgment of the lower court is therefore reversed with instructions to grant a new trial in accordance with the views herein expressed.

PARKER, C. J., and PRICE, J., dissenting.